COMMONWEALTH *vs.* STEPHEN P. WELCH.

Middlesex. May 2, 1995. - June 22, 1995.

Present: LIACOS, C.J., LYNCH, O'CONNOR, & GREANEY, JJ.

*Probable Cause. Search and Seizure,* Probable cause, Warrant, Affidavit. *Constitutional Law,* Probable cause, Search and seizure, Privacy.

At a hearing on a motion to suppress evidence, the judge's findings clearly established that police investigation had corroborated an anonymous informant's tip and had demonstrated the informant's basis of knowledge and veracity: as a result police officers had probable cause to stop and to search the defendant and his automobile for cocaine. [650-653]

A fire fighter did not have a reasonable expectation of privacy in the common locker room at the fire station and the use of a trained narcotics dog to search the room with the fire chief's consent was lawful. [653-654]

An affidavit in support of an application for a search warrant of a particular locker in a locker room demonstrated probable cause to believe the locker contained contraband and the affidavit was not required to have attached to it the official certification of the qualifications of a narcotics detecting dog and its handler, who had lawfully detected narcotics in the room but not the particular locker. [654-655]

INDICTMENTS found and returned in the Superior Court Department on March 10, 1993.

Pretrial motions to suppress evidence were heard by *George A. O'Toole, Jr., J.,* and the cases were heard by *Peter M. Lauriat, J.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Alan D. Tuttman* for the defendant.

*Thomas F. Robertson,* Special Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant was found guilty of trafficking in cocaine in violation of G. L. c. 94C, § 32E (*b*) (1) (1992 ed.), and possession with intent to distribute marihuana in

violation of G. L. c. 94C, § 32C (*a*) (1992 ed.). The defendant timely appealed from his convictions and from the denial of his three motions to suppress evidence obtained during searches of his person, his automobile, and a locker at a Medford fire station. We transferred the case here on our own motion. We affirm.

We summarize the facts as found by the motion judge. On January 29, 1993, an officer of the Cambridge police department received information from a confidential source that the defendant would deliver a quantity of cocaine to an individual he would meet at the corner of Massachusetts Avenue and Bigelow Street in Cambridge, approximately in front of the Central Square YMCA. The informant told the officer the defendant's name and his telephone number, identified him as a Medford firefighter, described his physical appearance, said that he would be driving a Ford station wagon, and gave the approximate time for the drug delivery as between 7:30 and 8 P.M. The informant did not reveal how he had obtained this information, and he had not previously provided such information to the police.

In response to this tip, the officer confirmed the telephone number as being listed to the defendant. Thereafter, a surveillance was set up of the area in front of the YMCA on Massachusetts Avenue. Shortly before 8 P.M., the police observed a Mercury station wagon[1] arrive in the area. The vehicle stopped briefly on one side of the street and then made a U-turn to stop near a bank of public telephones at the corner of Massachusetts Avenue and Bigelow Street. A person, later identified as the defendant, got out of the vehicle and approached the telephones. He did not appear to make or to receive a telephone call. The police observed that his description matched the one given by the informant. They also observed a fire department decal on the rear window of the station wagon, checked the registration plate of the vehicle, and

---

[1] We note that "Mercury" is a brand name of the Ford Motor Company, and that models bearing that name are similar in size and appearance to models bearing the "Ford" name.

confirmed that it was registered to the defendant. After a short time at the telephones, the defendant got back into his automobile and started the engine, apparently preparing to leave.

With the details of the informant's prediction confirmed to their satisfaction, the police approached and asked the defendant to get out of his vehicle. As the defendant did so, he said, "I'm a Medford firefighter, and I'm married. Why don't you guys give me a break?" A search of the defendant's vehicle was then conducted without a warrant. The search yielded a packet of white powder, subsequently identified as cocaine, weighing just under twenty-eight grams. The police arrested the defendant, and thereafter marihuana was found in the spare tire well in the back of the station wagon, and on searching the defendant, the police found $327.

While these events were taking place, the police also had the defendant's house under surveillance. The police were able to obtain the defendant's address by checking the telephone listing supplied to them by the informant. The defendant had not appeared at his house during the time of the surveillance.

After the defendant's arrest, the officer contacted a detective of the Medford police department and reported the events which had taken place. Thereafter, the detective went to Medford fire department headquarters and spoke with the deputy fire chief, telling him that the defendant had just been arrested in Cambridge. The deputy chief stated that the defendant was supposed to have been on duty at the Park and Salem Streets station.

The detective and the deputy chief proceeded to the fire station and went to the "lieutenants' room," which is located on the second floor of the station. This room is used by lieutenants in the fire department while they are on duty at the station. The lieutenants' room is a single, open room, containing a cot and four metal lockers, as well as some other furniture. Apart from the lockers, which are assigned to individual officers, the room is a common room, shared by the various officers while on duty. The deputy chief did not know

which locker was assigned to the defendant and did not know whether there were keys to the lockers.

The detective arranged to have a narcotics detection dog from the Medford police department brought to the fire station. The dog is trained to detect by smell the presence of certain illegal drugs. The dog's handler brought the dog to the lieutenants' room and the dog started to bark and to scratch when it got to the area in front of the lockers. The dog actually stopped in front of one of the lockers, one that was not identified as the defendant's, but the dog's handler testified that the dog's detection of drug odors could not be so specific as to identify a particular locker because the dog's own motions, as it grew more excited, moved the air in its vicinity, making it more difficult to distinguish one locker from the others.

On the basis of the information gathered at the station, the Medford detective applied for and was issued a search warrant for the defendant's locker in the lieutenants' room. The warrant was executed and the police discovered $3,400 in cash rolled up in a sock, a notebook purportedly tracking drug transactions, and some cocaine residue.

The defendant contends that his right to be free from unreasonable search and seizure under the Fourth Amendment to the United States Constitution and under art. 14 of the Massachusetts Declaration of Rights was violated by the warrantless search of his person, his automobile, and his locker, and by the seizure of evidence. He alleges that the requisite showing of probable cause required for a search and seizure based on information provided by an unnamed informant was not met. The defendant also contends that he had a reasonable expectation of privacy in his living quarters and in his locker such that the search conducted by the police and the narcotics detection dog violated his constitutional rights. The defendant further alleges that the application for the search warrant for his locker was facially deficient, thereby rendering the search warrant invalid because of the omission of an attachment, which contained material information regarding the qualifications of the narcot-

ics detection dog. Finally, the defendant contends that the affidavit filed in support of the application for the search warrant was overly broad with respect to the area to be searched and rendered the warrant invalid.[2]

1. *Probable cause.* In order to have had probable cause to arrest and to search the defendant and his automobile, the police would have had to have known enough facts and circumstances "to warrant a person of reasonable caution in believing" that the defendant possessed cocaine. *Commonwealth* v. *Cast*, 407 Mass. 891, 895 (1990), quoting *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982). When analyzing probable cause, we are mindful that we are dealing with probabilities, which are factual and practical considerations of everyday life. See *Commonwealth* v. *Cast*, *supra*, quoting *Draper* v. *United States*, 358 U.S. 307, 313 (1959). We also note that "[r]easonable inferences and common knowledge are appropriate considerations for determining probable cause." *Commonwealth* v. *Alessio*, 377 Mass. 76, 82 (1979), and cases cited.

Where an unnamed informant's tip is relied on by the police as supplying probable cause to arrest and to search, art. 14 requires that the information satisfy the two-pronged standard set forth in *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969).[3] As a rule, the Commonwealth must demonstrate some of the underlying circumstances from which (a) the informant gleaned his information (the "basis of knowledge" test), and (b) the law enforcement officials could have concluded the informant was credible or reliable (the "veracity" test). *Commonwealth* v. *Cast*, *supra* at 896. *Commonwealth* v. *Upton*, 394 Mass.

---

[2]The defendant failed to raise this issue at trial; thus we need not decide it. See *Commonwealth* v. *Tabor*, 376 Mass. 811, 823 n.18 (1978).

[3]Article 14 provides more substantive protection to the criminal defendant than does the Fourth Amendment in the determination of probable cause. We view the contested searches in light of the more stringent standards of art. 14, with the understanding that, if these standards are met, so too are those of the Fourth Amendment. See *Commonwealth* v. *Byfield*, 413 Mass. 426, 429 n.5 (1992).

363, 374-375 (1985). In relying on this type of confidential information, we have said that the tip must come not only from a credible person, but the informant "must be shown to be relying on something more than a casual rumor or an individual's general reputation." *Commonwealth v. Robinson*, 403 Mass. 163, 165 (1988), quoting *Commonwealth v. Avery*, 365 Mass. 59, 63 (1974). The reliability of an informant may be bolstered by the fact that the police know the informant's identity and address or telephone number and would be able to contact him or her. See *Commonwealth v. Cast, supra* at 898-899. Moreover, an informant's detailed tip, plus independent police corroboration of those details, can compensate for deficiencies in either or both prongs of the *Aguilar-Spinelli* standard and thus satisfy the art. 14 probable cause requirement. *Commonwealth v. Cast, supra* at 896. *Commonwealth v. Upton, supra* at 375. The motion judge concluded that the police had probable cause to search the defendant and his automobile. He ruled that the police corroboration of the specific details of the informant's tip and the accuracy of the informant's predictive information were sufficient to satisfy both prongs of the *Aguilar-Spinelli* standard. The defendant contends that the motion judge erred in reaching these conclusions. We disagree.

The judge's findings of fact are binding in the absence of clear error, and we view, with particular respect, the conclusions of law which are based on them. *Commonwealth v. Cast, supra* at 897, citing *Commonwealth v. Bottari*, 395 Mass. 777, 780 (1985).

The judge's findings clearly establish that police investigation corroborated the informant's tip and satisfied both prongs of the *Aguilar-Spinelli* test. The informant named the defendant, identified him as a Medford firefighter, gave the defendant's telephone number, and described his physical appearance. Furthermore, the informant stated that the defendant would be driving a Ford station wagon and that he would be delivering a quantity of cocaine to someone at the corner of Bigelow Street and Massachusetts Avenue, between 7:30 and 8 P.M. From the level of detail, it could be

inferred that the informant had direct knowledge of the defendant and of the criminal activity that was to take place on that evening.

Any deficiency in ascertaining the informant's basis of knowledge from the tip alone was adequately compensated for by independent police corroboration of the details of the tip. After receiving the information from the informant, the officer confirmed the telephone number as being listed to the defendant. In addition, the informant accurately predicted the behavior of the defendant on the night of the arrest. See *Commonwealth* v. *Robinson, supra* at 166 (informant described defendant and predicted train on which he would be arriving). Contrast *Commonwealth* v. *Borges*, 395 Mass. 788, 789 (1985) (informant did not indicate to police any expected behavior on defendant's part). These predictions were confirmed by subsequent police observations. The police observed a man, matching the description given by the informant, arrive at the stated location, shortly before 8 P.M., in a Mercury station wagon. The police also observed a fire department decal on the window of the station wagon, which supported the informant's claim that the defendant was a firefighter.

With regard to the veracity prong of the requirements for probable cause under art. 14, the motion judge found that the standard was met because of the accuracy of the informant's predictive information, combined with police corroboration of the specific details of the tip. We agree. Although the informant had not provided information to the police in the past, the officer testified that he knew the informant's name and address.[4]

We reject the defendant's argument that the corroborative information obtained by the police during their surveillance did not include any details which were not easily obtainable by an uninformed observer. The police observed the defend-

[4]Information supplied to the police by citizens is not subject to the same scrutiny as that supplied by unnamed police informants. *Commonwealth* v. *Carey*, 407 Mass. 528, 534-535 n.4 (1990). We do not rely on this difference in deciding this case.

ant arrive at the predicted location. They saw the defendant stop his vehicle on one side of the street, make a U-turn, and come to a stop at a bank of telephones at the location predicted by the informant. The defendant left his vehicle and proceeded to the telephones; however, the police observed that he did not appear to make or to receive a telephone call. It would be reasonable to conclude that the defendant stopped for some reason other than to use the telephone. The defendant's behavior took on special significance to the trained eye and could be relied on by the police in making their assessment of the existence of probable cause. See *Commonwealth* v. *Cast, supra* at 900. We conclude that police corroboration of virtually every detail of the informant's tip regarding the defendant and his behavior, together with certain indicia of reliability in the tip itself, gave them enough knowledge to meet both prongs of the *Aguilar-Spinelli* standard. We hold therefore that the police had probable cause to stop and to search the defendant and his automobile.[5]

2. *"Search" of the lieutenants' room.* In order to decide whether the defendant's constitutional rights were violated, we first must determine whether a search in the constitutional sense took place. See *Commonwealth* v. *Frazier*, 410 Mass. 235, 244 n.3 (1991). "This determination turns on whether the police conduct has intruded on a constitutionally protected reasonable expectation of privacy." *Commonwealth* v. *Montanez*, 410 Mass. 290, 301 (1991). "The measure of the defendant's expectation of privacy is (1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize the expectation as reasonable." *Id.*, and cases cited. In evaluating the reasonableness of an individual's expectation of privacy, we look to a number of factors, including the character of the location involved. *Common-*

[5]The defendant does not attack the scope of the search; therefore, we do not address the issue except to note, as the Superior Court judge did, that nothing beyond the scope of a legitimate automobile search seems to have occurred.

*wealth* v. *Pina*, 406 Mass. 540, 545, cert. denied, 498 U.S. 832 (1990). Thus, we consider whether the defendant owned the place involved, *Commonwealth* v. *Montanez, supra* at 301-302, citing *Rawlings* v. *Kentucky*, 448 U.S. 98, 104 (1980); whether the defendant controlled access to the area, *Commonwealth* v. *D'Onofrio*, 396 Mass. 711, 717 (1986); and whether the area was freely accessible to others, *Sullivan* v. *District Court of Hampshire*, 384 Mass. 736, 742 (1981). We have stated that "an individual can have only a very limited expectation of privacy with respect to an area used routinely by others." *Id*. See *Commonwealth* v. *Pina*, *supra* at 544-546; *Commonwealth* v. *D'Onofrio, supra.*

In applying the above factors to the facts of this case, we conclude that the judge was correct in ruling that the defendant did not have a reasonable expectation of privacy in the lieutenants' room. The defendant clearly did not own the room. Except for the locker, he shared the room in common with others, who were as free to come and go and use the room, as he was. The defendant lacked the authority to exclude other firefighters from the room. Because there was no reasonable expectation of privacy on the part of the defendant, there was no search of the lieutenants' room which impaired the defendant's constitutional rights.

Furthermore, we agree with the judge's decision that the area was under the control of the fire department and the deputy fire chief's granting the police permission to search constituted valid consent to search the room. In light of our conclusions that the defendant did not have a reasonable expectation of privacy in the common area searched and that the deputy chief consented to the search of the room, we need not reach the judge's ruling that bringing the narcotics detection dog into the lieutenants' room did not constitute a "search" in the constitutional sense.

3. *Validity of the search warrant.* The motion judge found that the warrant was based on probable cause to believe that the defendant's locker contained contraband and related evidence. He ruled that the warrant was not defective because

the affidavit did not advert to the certificates of training for the dog and the dog handler. We agree.

As noted earlier, "the judge's findings of fact are 'binding in the absence of clear error.'" *Commonwealth* v. *Bottari*, 395 Mass. 777, 780 (1985), quoting *Commonwealth* v. *Correia*, 381 Mass. 65, 76 (1980). General Laws c. 276, § 2B (1992 ed.), requires that an affidavit be submitted to support an application for a search warrant which "shall contain the facts, information, and circumstances upon which [the affiant] relies to establish sufficient grounds for the issuance of the warrant." To justify the issuance of a search warrant, a magistrate must examine the facts and circumstances presented and determine that there is probable cause to issue the warrant. See *Commonwealth* v. *Truax*, 397 Mass. 174, 178 (1986). "In reviewing a finding of probable cause, only the facts revealed on the face of the affidavit and any reasonable inferences therefrom may be considered." *Commonwealth* v. *Allen*, 406 Mass. 575, 578 (1990). "To determine whether the affidavit is sufficient, it should be read in a commonsense, not a hypertechnical, manner." *Commonwealth* v. *Truax*, *supra* at 180. *Commonwealth* v. *Upton*, 394 Mass. 363, 376 (1985). The affidavit will "be evaluated as a whole, not broken down into fragments with each fragment subjected to independent scrutiny." *Commonwealth* v. *Truax*, *supra*, citing *Commonwealth* v. *Stewart*, 358 Mass. 747, 751 (1971).

The defendant contends, absent a written showing of the qualifications of the narcotics detection dog and its handler, there was no basis to conclude that probable cause existed. The affidavit stated that the dog and its handler were certified in narcotics detection by the Boston police department. Despite the failure to attach the official certification, the affidavit sufficiently averred to their qualifications and did not render the affidavit invalid.

The motion judge properly denied the defendant's motions to suppress.

*Judgments affirmed.*