COMMONWEALTH *vs.* MICHAEL E. BRYANT.

Worcester. May 5, 2006. - August 25, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Larceny. Search and Seizure,* Computer, Expectation of privacy. *Constitutional Law,* Search and seizure, Standing to question constitutionality. *Practice, Criminal,* Motion to suppress, Standing, Jury and jurors, Empanelment of jury, Challenge to jurors, Mistrial. *Jury and Jurors.*

A criminal defendant had no standing to challenge the seizure of computer files from a law firm, where the defendant, as an employee of the firm, had no reasonable expectation of privacy in the law firm's premises or the files seized. [496-498]

At a criminal trial, the judge did not deny the defendant his right to a fair and impartial jury in summarily denying the defendant's challenges for cause and limiting him to six peremptory challenges, where the defendant made no showing that he was forced to accept a juror he would have peremptorily challenged, and where, even if the defendant had made such a showing, the judge did not abuse his discretion in refusing to exclude for cause any of the jurors on whom the defendant exercised his peremptory challenges. [498-501]

The judge at a criminal trial did not abuse his discretion in denying the defendant's motion for a mistrial after a witness offered unsolicited testimony that certain insurance claims were "bogus," where the statement was not so inflammatory that a denial of the motion was inherently an abuse of discretion, where subsequent evidence mitigated the impact of the statement, and where the judge's curative instruction sufficiently remedied any undue prejudice that the statement may have immediately caused. [501-504]

INDICTMENTS found and returned in the Superior Court Department on June 12, 1998.

Pretrial motions to suppress evidence were heard by *Robert H. Bohn, Jr.,* J., and the cases were tried before him.

The Supreme Judicial Court granted an application for direct appellate review.

*William S. Smith* for the defendant.

*David M. Lieber,* Assistant Attorney General, for the Commonwealth.

*Bruce P. Keller & Phillip R. Malone,* for National Center for Missing and Exploited Children & another, amici curiae, submitted a brief.

IRELAND, J. In 2001, the defendant, an attorney, was tried and found guilty of three indictments charging conspiracy to commit larceny of insurance companies in violation of G. L. c. 274, § 7. The defendant appealed, arguing that a Superior Court judge erred in denying a motion to suppress computer files seized from the law firm for which the defendant worked because the analysis of the electronically stored files (computer data) took more than seven days in violation of G. L. c. 276, § 3A. We granted the Commonwealth's application for direct appellate review. Because we conclude that the defendant has no standing to challenge the seizure of the computer files, and that there is no merit to the defendant's other claims of error, we affirm the convictions.[1]

*Facts and procedural background.* We recite the essential facts drawn from the trial record and, where relevant, from the uncontested facts found by the motion judge (who also was the trial judge) in his 1999 memoranda concerning two motions to suppress that the defendant had joined.[2] Certain details will be reserved for our discussion of the issues raised.

In May, 1996, a Superior Court judge issued search warrants for the various premises of the law firm of Ellis & Ellis and to seize, inter alia, computers and computer files. As a result of the May, 1996, search, the same judge issued a second search warrant in February, 1998.

In June, 1998, the defendant, an attorney at the firm, was

---

[1] We acknowledge the amicus brief of the National Center for Missing and Exploited Children and the American Prosecutors Research Institute.

[2] Although there was some overlap between the two motions to suppress that the defendant had joined, the judge's memorandum of decision dated August 18, 1999, primarily concerned the execution of the warrants at the premises, the sufficiency of the affidavit in support of the warrants, the procedure used to protect privileged documents, and standing. The judge's memorandum of decision dated August 27, 1999, which is the subject of this appeal focused mainly on the issues concerning the methods used to analyze the computer files and whether the Commonwealth was required to complete its analysis of the seized computer data within seven days. In both decisions, the judge allowed the suppression of some files, none of which appears to be relevant to the issues in this case.

charged in eleven indictments that included larceny, attempted larceny, insurance fraud, and conspiracy to commit larceny. Subsequent to the judge's decisions on the motions to suppress, the defendant was tried and found guilty of the three indictments charging conspiracy to commit larceny in a jury trial. The three indictments charged that the defendant conspired with James N. Ellis, Jr., Nicholas J. Ellis, a client, and a doctor to commit larceny of insurance companies concerning three motor vehicle accidents the client had in 1992 and 1993.[3] The defendant's motions for required findings of not guilty were denied. For each guilty verdict, the defendant was sentenced to serve twelve months of a two and one-half year sentence in a house of correction, with the balance suspended for five years. The defendant was to serve the sentences concurrently. A single justice of the Appeals Court granted a stay of the defendant's sentence pending appeal.

*Discussion.* In his brief, the defendant concedes that at trial, the Commonwealth presented sufficient evidence to convict him.[4] On appeal, he argues that the judge erred in denying the motion to suppress computer data seized pursuant to a search warrant; that he was denied a right to a fair and impartial jury because the judge denied the defendant his right to challenge jurors for cause; and that the judge abused his discretion in denying a motion for a mistrial after a witness's remark. We consider each in turn.

1. *Motion to suppress computer data.* The Commonwealth argues that, as a threshold matter, the defendant has no standing to challenge the seizure of the computer data because, as an employee of the law firm, he had no reasonable expectation of privacy in the law firm's premises or the files seized. The judge's memorandum of decision dated August 27, 1999, on the motion to suppress the computer files did not address the issue of standing. However his decision dated August 18, 1999, did address the issue (see note 2, *supra*). In that memorandum of

---

[3]At trial, efforts were made to prevent the jury from learning that the defendant was charged with more than three indictments, that the documents used were seized pursuant to a search, and that some coconspirators had pleaded guilty.

[4]Some of that evidence was the defendant's dictation that was transcribed and entered into the firm's computer system.

decision the judge found, "The files were open and accessible to any employee in the law firm who had occasion to use a particular file. None of the employee defendants has established that the documents that they seek to have suppressed were maintained in such a way that would entitle him or her to any privacy in the document."

It is not clear from the record before us whether the judge assumed (or intended) that his decision on standing applied to the motion to suppress the computer files or whether the Commonwealth raised this argument in its opposition to the defendant's motion concerning the computer files. Moreover, the defendant does not address the standing issue in his brief.

However, the record does contain evidence that the defendant did not own the premises from which the computer files were seized. Indeed, part of the defense was that the defendant had no authority at the law firm and was just doing what he was told by the firm's owners.[5] Moreover, the files were freely accessible to others in the law firm, including the owners and secretaries. See *Commonwealth* v. *Welch*, 420 Mass. 646, 653-654 (1995) (reasonable expectation of privacy determined by such factors as "whether the defendant owned the place involved . . . whether the defendant controlled access to the area . . . and whether the area was freely accessible to others" [citations omitted]). The defendant had no authority to exclude others from using the computers. *Id.* at 654. Accordingly, on this record, we conclude that the defendant has not established that he has standing to challenge the seizure of the files. See *Commonwealth* v. *Cruz*, 430 Mass. 838, 844 (2000), citing *Commonwealth* v. *Va Meng Joe*, 40 Mass. App. Ct. 499, 503 n.7 (1996), *S.C.*, 425 Mass. 99 (1997) ("The motion judge was correct in denying the defendants' motion to suppress, although we rely on a different ground"); *Commonwealth* v. *Albert*, 51 Mass.

---

[5] There is nothing in the record before us indicating the exact nature of the ownership structure of the firm. There was testimony that the firm was owned by James Ellis, Jr., and Nicholas Ellis, and that James Ellis, Sr., was of counsel. Whatever the structure of the firm, the defendant does not claim that he owned the computers or the files seized. Nor is this a case where the defendant would be entitled to automatic standing. See *Commonwealth* v. *Amendola*, 406 Mass. 592, 601 (1990) (automatic standing where possession of seized item is essential element of guilt).

App. Ct. 377, 379 (2001) (court may affirm denial of motion to suppress on basis of standing even if Commonwealth or judge did not raise issue). Thus, the documents seized were properly admitted at his trial.

Moreover, we decline to take the opportunity to discuss the underlying issue of first impression concerning the seizure and examination of computer files from a law office. The parties rely on the memoranda of decision on the motions to suppress, but have not included in the record the materials underlying those decisions. Thus, the issue whether the review of computer files that were seized from a law office pursuant to a warrant was required to be completed within the seven days' return time, G. L. c. 276, § 3A, is best left for another day. We now address the defendant's claims of error at his trial.

2. *Jury empanelment.* The defendant argues that he was denied his right to a fair and impartial jury because the judge summarily denied the defendant's challenges for cause and limited him to six peremptory challenges. We disagree.

At trial, just before the empanelment of the jury began, the clerk told the defendant, in relevant part, that he had six peremptory challenges "and such others as you may have good cause to challenge. If you object to any of them, you must do so after they are called and before they are sworn."

The judge began by addressing the entire group of potential jurors, introducing the defendant and attorneys and reading a list of potential witnesses. Then he asked the group a number of questions, including those that probed their ability to be impartial and their understanding and acceptance of the burden of proof and the presumption of the defendant's innocence. See G. L. c. 234, § 28. He also told potential jurors that they would have an individual opportunity to speak to him about their responses to any one of the questions, once the list of questions was read. At the conclusion of the individual voir dire, the judge again invited any potential juror who wanted to speak to him to come forward.

At sidebar, the judge then identified for the attorneys twenty-eight jurors who would remain and told the attorneys that they would have a chance to exercise their peremptory challenges. All other jurors were excused.

Defense counsel did not challenge the judge's implicit decision concerning juror impartiality until after the judge seated the first fourteen potential jurors and declared, "Counsel and I have agreed that the fourteen of you are impartial . . . neutral . . . [and none] of you is predisposed to the ultimate outcome of this case," and the Commonwealth exercised its peremptory challenges. Defense counsel then asserted that the judge had never asked whether counsel had objections for cause and therefore defense counsel believed he was supposed to wait to offer any challenges for cause.

The judge asked defense counsel to identify the jurors to whom he objected. Defense counsel identified seven jurors: no. 1-12, no. 1-15, no. 3-4, no. 3-5, no. 3-15, no. 5-1, and no. 4-16.[6] The judge listened to defense counsel's reason for objecting to the jurors, summarily rejected each request, declared that he had found the jurors to be impartial and indifferent, and stated that the time to strike for cause had passed. Defense counsel objected. The transcript shows that, although defense counsel exercised all six of his peremptory challenges, he used only four of them to excuse jurors he had identified previously (jurors no. 1-12, no. 1-15, no. 5-1, and no. 3-15). Thus, three of the jurors the defendant wanted to challenge for cause (jurors no. 3-4, no. 3-5, and no. 4-16) sat on the jury.

Although the defendant points out that defense counsel was confused about the proper time to raise his challenges for cause because of what the clerk stated before the voir dire of jurors began, we conclude that the defendant waived his right to challenge jurors for cause by not raising it, at least when the judge told counsel at sidebar which twenty-eight jurors were to remain subject to peremptory challenges. However, even if the defendant did not waive his right, there was no abuse of discretion.

The defendant specifically challenges the impartiality of only jurors no. 1-12, no. 1-15, no. 3-4, and no. 5-1, of which only juror no. 3-4 was seated. He further argues that he was forced to accept juror no. 3-4. The record shows, however, that defendant still had peremptory challenges available but chose

---

[6]The defendant's claim that he also challenged juror no. 5-9 for cause is not supported in the record.

not to challenge juror no. 3-4. Moreover, other than juror no. 3-4, he identifies no empanelled juror whom he would have replaced if he had retained additional peremptory challenges. He also did not request additional peremptory challenges. See *Commonwealth* v. *Leahy*, 445 Mass. 481, 499 (2005). Thus he has not made a showing "that he was thereby forced to accept a juror he would have peremptorily challenged." *Id.* at 497.

Moreover, even if the defendant made this showing, we conclude that the judge did not abuse his discretion in refusing to exclude for cause any of the jurors on whom the defendant exercised his peremptory challenges. *Id.* at 496-497, quoting *Commonwealth* v. *Seabrooks*, 433 Mass. 439, 445 (2001) (rejecting claim of diminution of peremptory challenges where judge did not wrongfully refuse to excuse for cause any of fourteen jurors peremptorily challenged by defendant). A judge may accept each juror's representation of impartiality unless there is "solid evidence of a distinct bias." *Commonwealth* v. *Leahy*, *supra* at 499, quoting *United States* v. *Angiulo*, 897 F.2d 1169, 1183 (1st Cir. 1990). In such determinations, we generally "defer to the judge, who benefits from the live testimony of the juror." *Commonwealth* v. *Leahy*, *supra* at 499, citing *Patton* v. *Yount*, 467 U.S. 1025, 1031 (1984). See *Patton* v. *Yount*, *supra*, citing *Irvin* v. *Dowd*, 366 U.S. 717, 723 (1961) (trial judge's finding of juror impartiality may "be overturned only for 'manifest error' "). Moreover, "[i]t is not required . . . that the jurors be totally ignorant of the facts and issues involved. . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Commonwealth* v. *Leahy*, *supra* at 494, quoting *Irvin* v. *Dowd*, *supra* at 722-723.

Juror no. 1-12 was insured by one of the insurance companies involved in the case.[7] However, when the judge asked whether she could "listen to everybody and give them whatever weight and value [she thought] they [were] entitled to receive," the juror responded, "I think I could do that." Juror no. 1-15, a workers' compensation liaison whose company had business

---

[7] She also had stated that she would believe a police officer over other witnesses. However, there were no police officers scheduled as witnesses, nor did any police officers testify.

with the doctor implicated in the case, responded affirmatively to the judge's question about whether she could decide the case on the merits. Juror no. 3-4, who worked for an insurance company and who had worked for one of the insurance companies involved in the case, responded, "I do," when the judge asked whether she thought she could be impartial and decide the case on the evidence only. Juror no. 5-1 was an insurance underwriter who knew about the law firm and said she knew that "one of the brothers was incarcerated." The judge explained that the defendant was presumed to be innocent, and asked whether she could decide whether the Commonwealth had met its burden to prove the defendant guilty beyond a reasonable doubt. She responded, "I feel I could. I hope I would."

A judge is "only required to 'determine whether jurors [could] set aside their own opinions, weigh the evidence (excluding matters not properly before them), and follow the instructions of the judge.' " *Commonwealth* v. *Leahy, supra* at 495, quoting *Commonwealth* v. *Stroyny*, 435 Mass. 635, 639 (2002). Similar responses to queries concerning juror impartiality have been held sufficient to support a judge's determination that a particular juror is impartial. *Commonwealth* v. *Leahy, supra* at 495-496 & n.13 (affirming judge's determination of impartiality where juror responses included: "I think. I've never done this before so it's hard"; "I think I could"; and "I suppose so"). Cf. *Commonwealth* v. *Auguste*, 414 Mass. 51, 57-58 (1992) (error where judge's inquiry avoided very issue of juror impartiality); *Commonwealth* v. *Somers*, 44 Mass. App. Ct. 920, 921-922 (1998) (prejudicial error for trial judge to force defense counsel to expend final peremptory challenge on juror who stated, "I don't know," in response to question whether he could be impartial). This court does not "revisit [credibility determinations] absent a compelling reason." *Commonwealth* v. *Leahy, supra*. There was no abuse of discretion.[8]

3. *Motion for a mistrial.* On the seventh day of testimony,

---

[8]Although the defendant does not raise in his brief any issue regarding the voir dire of other jurors the defendant identified as those he would have challenged for cause and who sat on the jury (jurors no. 3-5 and no. 4-16), our review reveals no compelling reason to question the judge's credibility determination.

one of the Commonwealth's witnesses, the "PIP coordinator" at Ellis & Ellis, offered unsolicited testimony that the claims for lost wages Ellis & Ellis pursued on behalf of the client were "bogus." Counsel for the defendant objected to the testimony, the objection was sustained, and counsel then immediately moved for a mistrial.[9] The jury were temporarily excused, and during a lengthy sidebar conference, the judge stated:

> "If this trial were over today, that is if this witness were the last witness, and there were only four witnesses who testified, I would find that her response was prejudicial to the effect that a mistrial was required. My understanding is there are going to be many more witnesses. The impact of her response is going to be diluted the more witnesses there are and the more testimony there is. I am not going to declare a mistrial today. If I find, however, that this response continues to stand out and predominate over other witness' testimony and the other exhibits in this case, then I may revisit this issue of the mistrial. . . . If we start over on Monday, we are going to have to repeat exactly what we have done . . . . That does not seem to be a very efficient use of everybody's time. I don't think that this

---

[9]The colloquy was as follows:

THE PROSECUTOR: "How would you characterize the claim that you, on behalf of Ellis & Ellis and [the client], submitted to National Grange regarding lost wages or earning capacity?"

DEFENSE COUNSEL: "Objection to that."

THE JUDGE: "Lost earning capacity."

THE PROSECUTOR: "How do you characterize that part of the PIP claim?"

THE WITNESS: "Are you asking for my opinion?"

DEFENSE COUNSEL: "Objection."

THE PROSECUTOR: "Based on your work on these claims."

THE WITNESS: "Are you asking my opinion?"

THE PROSECUTOR: "Yes."

THE WITNESS: "I thought it was bogus."

DEFENSE COUNSEL: "Objection."

THE JUDGE: "Sustained."

DEFENSE COUNSEL: "May I be heard, judge, at the side bar?"

THE JUDGE: "Come up."

DEFENSE COUNSEL: "I move for mistrial. That was the most horrible thing that ever happened."

defendant's rights have been jeopardized to the extent that a mistrial is warranted today."

At the conclusion of the sidebar conference, the judge indicated that, over a holiday weekend, he would further contemplate whether to declare a mistrial. The jury were released for the weekend, and on Monday, on the reconvening of the trial, the judge denied the defendant's motion for a mistrial and issued a curative instruction to the jury.[10]

The defendant argues that, because of the nature of the outburst, the judge's ultimate decision to issue a curative instruction and deny the defendant's motion for a mistrial based on considerations of judicial economy was an abuse of discretion. We disagree.

The decision whether to declare a mistrial is within the discretion of the trial judge. See *Commonwealth* v. *Kilburn*, 426 Mass. 31, 37 (1997); *Commonwealth* v. *Florentino*, 381 Mass. 193, 196 (1980). "Where a party seeks a mistrial in response to the jury's exposure to inadmissible evidence, the judge may 'correctly rel[y] on curative instructions as an adequate means to correct any error and to remedy any prejudice to the defendant.' " *Commonwealth* v. *Kilburn, supra* at 37-38, quoting *Commonwealth* v. *Amirault*, 404 Mass. 221, 232 (1989).

The statement was not so inflammatory that a denial of the defendant's motion for a mistrial was inherently an abuse of discretion. Indeed, we have upheld denials of mistrials in similar circumstances. See, e.g., *Commonwealth* v. *McGeoghean*, 412 Mass. 839, 843 (1992) (witness spontaneously testified that defendant had refused to take lie detector test); *Commonwealth* v. *Martino*, 412 Mass. 267, 281-282 (1992) (witness spontaneously testified that murder victim had told him that defendant

---

[10]The instruction provided, in relevant part:

"Now, when we recessed on Wednesday, ladies and gentlemen, there was a question asked of [the witness]. The question elicited [her] opinion with respect to the nature of the claims at issue in this case. [Her] answer to that question was not responsive to the question that was asked. It was not an admissible answer, and you are to strike that answer from your mind. If any of you made any notes with respect to the question and answer, you are to strike that from your notepads."

had threatened to kill her); *Commonwealth* v. *Florentino, supra* at 195-196 (witness spontaneously testified that coventurer had been convicted of murder at separate trial).

The judge's conclusion that judicial economy favored continuing the trial and that subsequent evidence would likely mitigate the impact of the inadmissible statement also was not improper. As the record reflects, after the witness's testimony, at least eight witnesses testified on behalf of the Commonwealth over approximately seven days, and substantial documentary and testimonial evidence strongly implicated the defendant in efforts to defraud insurers on behalf of the client. In light of this evidence, the unsolicited statement did not stand out; any lingering prejudicial effect of the statement was fairly dissipated by the evidence subsequently presented at trial. As to any undue prejudice that may have been immediately caused by the statement, the judge's curative instruction sufficiently remedied it. See *Commonwealth* v. *Garrey*, 436 Mass. 422, 435 (2002). We assume that the jury followed the instruction, and conclude that there was no abuse of discretion. *Commonwealth* v. *Florentino, supra* at 196.

*Conclusion.* For the reasons set forth above, we find no merit to the defendant's claims of error.

*Judgments affirmed.*