COMMONWEALTH *vs.* ANTOINE AYOUB.

No. 09-P-132.

Worcester. March 18, 2010. - September 2, 2010.

Present: KANTROWITZ, BROWN, & SIKORA, JJ.

*Jury and Jurors. Practice, Criminal,* Jury and jurors, Empanelment of jury, Challenge to jurors, Argument by prosecutor.

At the trial of multiple indictments arising from the defendant's violent encounter with the police during an investigatory stop, no substantial risk of a miscarriage of justice arose from the empanelment of a juror who, during empanelment proceedings, had answered affirmatively, by raising her hand, the general question whether she would grant greater weight and credibility to the testimony of a police officer, where the judge, who subjected the juror to an individual voir dire, was in the best position to evaluate her credibility and was entitled to accept her representation of impartiality based on his observation of her under voir dire questioning. [565-567]

At a criminal trial, the prosecutor's comments in closing argument on the weakness of the defendant's case did not amount to improper personal comment on the defendant's credibility, suggest that the defendant had failed to prove his innocence, or lead the jury to believe that it was their responsibility to find the Commonwealth's witnesses credible [567-569]; further, no prejudice arose from a statement by the prosecutor that improperly invited speculation about offenses uncommitted and uncharged, where the statement referred to a peripheral circumstance of the case; where the judge's instructions to the jury warned them not to speculate; and where the statement did not create a reasonable possibility of a different verdict, given the overwhelming volume of inculpatory evidence [569-570]. BROWN, J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on February 13, 2007.

The cases were tried before *John S. McCann,* J.

*Joseph M. Kenneally* for the defendant.

*Donna-Marie Haran,* Assistant District Attorney, for the Commonwealth.

SIKORA, J. The defendant appeals from multiple convictions

arising from a violent encounter with the police during an investigatory stop. He challenges the empanelment of a particular juror and the prosecutor's closing argument to the jury. We affirm.

*Background.* A Superior Court jury could have found the following facts. On December 1, 2006, at about 2:00 A.M., Clark University campus police officer Michael Palermo noticed a yellow car parked on a street corner in Worcester. Officer Palermo believed that the driver of the vehicle, defendant Antoine Ayoub, had been attempting to entice two female college students into his car. When the officer approached the vehicle, the defendant drove away. The women told him that the defendant had attempted to lure them into his car. Officer Palermo broadcasted a description of the defendant and his vehicle to other campus officers and began pursuit.

Upon receiving the broadcast, two other campus officers saw the defendant's car and followed it. Officer Palermo pulled the defendant over, and all three officers approached the vehicle. They confronted him about the encounter with the women and requested his license and registration. Although he resisted initially by indicating that he was a deputy sheriff or State police informant, the defendant eventually produced the requested documents.[1] However, the exchange between the defendant and the officers grew contentious, so the officers called for backup from the municipal police. Three Worcester officers arrived momentarily. Fearing that the defendant had been attempting to reach for a weapon in the center console, the police asked him to come out of the vehicle. The defendant refused, and the officers tried to extricate him forcibly. A Worcester officer partially entered the car through the driver's door and grappled with the

---

[1] Officer Palermo testified that the defendant first produced what appeared to be a sheriff's badge but lacked any corresponding identification proving his employment as a sheriff. The defendant denied ever showing a badge to the officers and explained that the badge was merely visible on the passenger's seat. The defendant's badge was not an official sheriff's badge but a "reserve deputy sheriff" badge dispensed to individuals who may have supported the county sheriff's election.

The defendant attempted also to explain that he was a confidential informant for the Massachusetts State police. Subsequent information confirmed that representation. The defendant also made two calls — one to a State police officer and the other to his wife — despite the officers' requests that he not do so.

defendant as he attempted to start the car. Officer Palermo entered the car through a rear passenger window.

The defendant managed to restart the car and accelerated to a high speed with the two officers trapped inside. The car soon collided with an embankment and flipped onto its side, and the two officers inside the car suffered serious injuries. The car had struck a third officer in the knee as it started away.

The ensuing searches of the car, unchallenged on appeal, produced, among other items, a loaded .45 caliber semiautomatic pistol with an attached magazine for which the defendant's license was suspended; two additional magazines; and a silver pipe and separate piece of paper, both with cocaine residue. At trial all six of the officers involved in the encounter testified. The judge admitted in evidence the handgun and attached magazine; the two separate magazine clips of ammunition; and the pipe and paper. The defendant testified. The jury found him guilty of the charges arising from his physical confrontation with the police, his use of the automobile in that confrontation, possession of the firearm, and possession of controlled substances.[2]

*Analysis.* The defendant challenges his convictions on two grounds. He argues first that the Superior Court judge empaneled a biased juror. He contends also that the prosecutor committed various improprieties in his closing argument.

I. *Juror empanelment.* The defendant asserts that the trial judge abused his discretion when he allowed an individual (juror 27) to sit after she had answered affirmatively (by raising her hand) the general question whether she would grant greater weight and credibility to the testimony of a police officer.

During the empanelment process, "[a] judge is only required to 'determine whether jurors [could] set aside their own opinions, weigh the evidence (excluding matters not properly before them) and follow the instructions of the judge.' " *Commonwealth* v.

---

[2] The jury found the defendant guilty of four counts of assault and battery with a dangerous weapon, G. L. c. 265, § 15A (*b*); assault and battery on a police officer, G. L. c. 265, § 13D; unlawfully carrying a firearm, G. L. c. 269, § 10(*a*); possession of a firearm without a firearm identification card, G. L. c. 269, § 10(*h*); possession of a class B substance, G. L. c. 94C, § 34; possession of a class E substance, G. L. c. 94C, § 34; reckless operation of a motor vehicle, G. L. c. 90, § 24(2)(*a*); and failing to stop for police, G. L. c. 90, § 25.

*Bryant*, 447 Mass. 494, 501 (2006), quoting from *Commonwealth* v. *Leahy*, 445 Mass. 481, 495 (2005). "A trial judge has broad discretion in determining the partiality of a prospective juror . . . [and] is in a much better position than an appellate court to evaluate a prospective juror's ability to be impartial . . . ." *Commonwealth* v. *Jaime J.*, 56 Mass. App. Ct. 268, 271-272 (2002). Accordingly, "we give a trial judge's determination of impartiality great deference." *Commonwealth* v. *Ferguson*, 425 Mass. 349, 353 (1997).

During the examination of the prospective jurors, juror 27 and several other individuals answered affirmatively to the question whether they would afford greater weight and credibility to a police officer's testimony. Most of these individuals were subjected to individual voir dire and excused for demonstrating their inability to remain impartial. These voir dire examinations varied in content and duration depending on the individual's answers. In two instances, the judge excused individuals for stating that they could not be fair and impartial. The judge asked juror 27 whether, for any reason, she would be unable to listen to the evidence and be fair and impartial. She answered, "No." The judge then asked whether she had raised her hand to any venire question. She stated that she had but could not recall which one. The judge then asked her whether the question involved anything that would affect her impartiality in the case. She responded, "No, not at all."

In examining juror 27, the trial judge was in the best position to evaluate her credibility. See *id.* at 352-353, quoting from *Patton* v. *Yount*, 467 U.S. 1025, 1038 (1984) ("The determination of a juror's impartiality 'is essentially one of credibility and therefore largely one of demeanor' "). Based on his observation of her under voir dire questioning, the judge was entitled to accept her representation of impartiality. See *Commonwealth* v. *Bryant*, *supra* at 500.

A judge may accept a juror's representation of impartiality unless "solid evidence of a distinct bias" appears. *Commonwealth* v. *Leahy*, 445 Mass. 481, 499 (2005), citing from *United States* v. *Angiulo*, 897 F.2d 1169, 1183 (1st Cir. 1990). The judge's determination of the prospective juror's neutrality will stand unless "prejudice is manifest." *Commonwealth* v. *Clark*, 446 Mass.

620, 630 (2006). That deference acknowledges the judge's firsthand observation. See *Commonwealth* v. *Bryant, supra.*

Furthermore, defense counsel, privy to juror 27's responses, chose not to challenge her for cause or use a peremptory challenge. We find that the judge conducted a sufficient examination of juror 27. Her membership in the jury did not result in a substantial risk of a miscarriage of justice. It did not generate "a serious doubt whether the result of the trial might have been different had [an] error not been made." *Commonwealth* v. *Randolph*, 438 Mass. 290, 297 (2002), quoting from *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002).

II. *Prosecutor's closing argument.* The defendant argues also that the prosecutor "injected his personal belief in the credibility of the witnesses, repeatedly suggested to the jury that the defendant had failed to provide evidence that would explain his innocence, speculated as to facts not in evidence, and suggested to the jury that it was their responsibility to convict the defendant." "We consider the challenged comments in light of the entire argument, the judge's instructions, and the evidence at trial." *Commonwealth* v. *Burns*, 49 Mass. App. Ct. 677, 679-680 & n.5 (2000).

During his closing argument, the prosecutor stated that the defendant had told a "very wild unbelievable story about what happened" and gave "no explanation," "very little explanation," or said "almost nothing" about his actions, and characterized the defendant's testimony as "border[ing] on the ridiculous," "very self-serving . . . very weak," and "preposterous."[3]

We do not conclude, as the defendant proposes, that these statements amounted to improper personal comment on the defendant's credibility and suggested that the defendant had failed to prove his innocence. Rather, they constitute commentary on the weakness of the defendant's case. See *Commonwealth* v. *Feroli*, 407 Mass. 405, 409 (1990) ("A prosecutor is entitled to emphasize the strong points of the Commonwealth's case and the weaknesses of the defendant's case . . . ."); *Commonwealth* v. *Bregoli*, 431 Mass. 265, 275 n.17 (2000) (finding that the prosecutor's comment that the defendant "provided no explanation"

---

[3]The defendant did not object to these statements.

for certain misconduct was proper reflection on the strength of the Commonwealth's case and the weakness of the defendant's case). Also, a prosecutor may argue that the defendant is not credible. *Commonwealth* v. *Lucido*, 18 Mass. App. Ct. 941, 943 (1984) ("Where the defendant has testified, reference to the defendant's credibility in final argument is entirely proper"). The prosecutor neither injected his personal opinion of the defendant's account of the events nor shifted the burden of proof onto the defendant. See *Commonwealth* v. *Sherick*, 23 Mass. App. Ct. 338, 343-346 (1987). The judge took care to instruct the jurors that the burden of proof at trial rested solely with the Commonwealth and that the defendant shouldered no burden whatsoever to offer any evidence despite his decision to testify.

In reference to testimony of one of the officers, the prosecutor asked, "Frankly how can you find anything else? You would be really reaching to find something else," and stated that his testimony was "credible, and you had to believe it. It may not be easy to believe. Sometime[s] people's jobs are not easy, but that's okay. That's life. And we have to do our jobs." The defendant did not object to these statements during the trial. The defendant now contends not only that these statements constituted improper burden shifting and commentary on the defendant's credibility but also that they caused the jury to feel a responsibility to believe the Commonwealth's witnesses.

As with the statements above, we do not find that the prosecutor wrongly shifted the Commonwealth's burden onto the defendant or that he commented unfairly on the quality of the defendant's testimony. Further, we are not persuaded that the prosecutor's reference to "jobs" led the jury to believe it was their responsibility to find the Commonwealth's witnesses credible. Instead, its effect was merely to acknowledge the jury's difficult task of deciding matters of credibility. Although the prosecutor encouraged the jury to find the officer's testimony credible, his statements did not have the effect of compelling that result. And his use of the word "jobs" did not approach the forbidden proposal that a verdict of guilty was a civic duty. See *Commonwealth* v. *Degro*, 432 Mass. 319, 328-329 (2000). The judge's instructions neutralized any potential prejudicial impact because they made clear that matters of credibility lay exclusively within

the province of the jury. These unobjected-to statements did not create a substantial risk of a miscarriage of justice. See *id.* at 329. Neither separately nor collectively do the comments create "a serious doubt whether the result of the trial might have been different had [they] not been made." *Commonwealth* v. *Randolph*, 438 Mass. 290, 297 (2002), quoting from *Commonwealth* v. *Azar*, 435 Mass. at 687.

Finally, the prosecutor pondered aloud to the jury, "What's he going to do with those women? Hard to say. Very very fortunate that [the officer] was there. Very very fortunate."[4] These statements were imprudent. They invited speculation about offenses uncommitted and, of course, uncharged. In such circumstances, we inspect the record to consider "(1) whether the defendant seasonably objected; (2) whether the error was limited to collateral issues or went to the heart of the case; (3) what specific or general instructions the judge gave the jury which may have mitigated the mistake; and (4) whether the error, in the circumstances, possibly made a difference in the jury's conclusions." *Commonwealth* v. *Kater*, 432 Mass. 404, 422-423 (2000), quoting from *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987).

Defense counsel made a timely objection. The remark referred to a peripheral circumstance of the case, and certainly not to the heart of the charged offenses. The judge overruled the objection, but in final instructions reminded the jury that they must deliver a verdict "solely from the evidence admitted in this case and not from suspicion or conjecture." He specified that "the closing arguments of counsel are not evidence." Finally, the wayward remark did not create a reasonable possibility of a different verdict. The volume of inculpatory evidence, both testimonial and tangible, was overwhelming. The remark was not so inflammatory or suggestive as to "arous[e] the passions or sympathies of the jury." *Commonwealth* v. *Vazquez*, 65 Mass. App. Ct. 305, 312 (2006). In light of the quantity and strength of the inculpatory evidence, the remark was not harmful under the specific criteria of the *Kozec* and *Kater* decisions. Under the more general test of prejudicial error, it had slight effect, if any, on the verdict. See *Commonwealth* v. *Flebotte*, 417 Mass.

---

[4]The defendant objected to these statements.

348, 353 (1994); *Commonwealth* v. *Graham*, 431 Mass. 282, 288 (2000).[5]

*Judgments affirmed.*

BROWN, J. (dissenting). The prosecutor's closing argument was way over-the-top. "It is long past time for prosecutors to prepare their closing arguments carefully in order to avoid the possibility of reversals of convictions because of prosecutorial error." *Commonwealth* v. *O'Brien*, 377 Mass. 772, 778 (1979). How many times does this court and the Supreme Judicial Court have to admonish prosecutors to prepare carefully closing arguments? See, e.g., *Commonwealth* v. *Kelly*, 417 Mass. 266, 270-272 (1994); *Commonwealth* v. *Loguidice*, 420 Mass. 453, 454-457 (1995); *Commonwealth* v. *Silva-Santiago*, 453 Mass. 782, 807-808 (2009); *Commonwealth* v. *McLeod*, 30 Mass. App. Ct. 536, 541 (1991), and cases cited. We have even suggested that if prosecutors are unsure as to what to include in a closing speech, they seek guidance from the trial judge as to whether their proposed remarks would be "beyond permissible limits" of proper argument or perhaps even "sail[ing] unnecessarily close to the wind." See *Commonwealth* v. *Redmond*, 370 Mass. 591, 597 (1976). See also *Commonwealth* v. *Phoenix*, 409 Mass. 408, 428 (1991), and cases cited therein.

---

[5]We respect our dissenting colleague's insistence on fair closing argument, *post* at 570. Our reasoning does not diminish that prosecutorial duty. However, as the criteria of the *Kozec* and *Kater* decisions demonstrate, the critical question is not simply whether a prosecutor made an errant remark or remarks, but rather whether those remarks, as a reasonable possibility, tainted the verdict. The standard requires not merely fault, but harmful fault. It respects the competence of a trial judge and a correctly instructed jury to separate evidence from rhetoric, and it weighs the public interest embodied in a just conviction. "The public, whom the Commonwealth represents, 'has a substantial interest in prosecuting those accused of crime and bringing the guilty to justice.' " *Commonwealth* v. *Borders*, 73 Mass. App. Ct. 911, 912 (2009), quoting from *Commonwealth* v. *King*, 400 Mass. 283, 290 (1987). We set aside a verdict for the intrinsic purpose of eliminating its unreliability and not for the extrinsic purpose of punishing a prosecutor. Numerous other informal and formal proceedings can accomplish the second purpose.