COMMONWEALTH *vs.* RENE RAMOS.

No. 07-P-92.

Middlesex. December 5, 2007. - October 7, 2008.

Present: GELINAS, SMITH, & SIKORA, JJ.

*Search and Seizure,* Affidavit, Probable cause, Warrant, Trained dog. *Controlled Substances. Firearms. Probable Cause.*

Discussion of the standard of review in suppression matters. [777]

Discussion of the standard by which a judge considering a motion to suppress evidence weighs the affidavit supporting the underlying search warrant. [777-779]

A Superior Court judge properly allowed the criminal defendant's motion to suppress evidence consisting of ammunition feeding devices and firearms that police seized as part of a warranted search of a commercial storage unit prompted by a false positive alert to the presence of drugs on the part of a trained narcotics-detecting police dog, where the police affidavit enabling the issuance of the search warrant suffered from affirmative misstatements and omissions concerning the dog's reliability, without which the affidavit information fell below the level of probable cause for the issuance of the warrant. [779-781]

INDICTMENTS found and returned in the Superior Court Department on October 23, 2003.

A pretrial motion to suppress evidence was heard by *Paul A. Chernoff,* J.

*Miriam S. Pappas,* Assistant District Attorney, for the Commonwealth.

*Ryan M. Schiff* for the defendant.

SIKORA, J. A grand jury returned fifteen indictments against defendant Rene Ramos: four charging him with unlicensed possession of large-capacity ammunition feeding devices in violation of G. L. c. 269, § 10(*m*); and eleven charging him with unlicensed possession of firearms in violation of G. L. c. 269, § 10(*a*). Police had seized the feeding devices and weapons as part of a warranted search of a commercial storage unit. The

police affidavit enabling the issuance of the search warrant specifically relied upon an apparent positive alert to the presence of drugs within the storage unit by a trained narcotics-detecting dog. The question on appeal is the integrity of the affidavit.

*Factual background.* The following facts emerge from the findings of the motion judge and from uncontested evidence necessarily credited by him. See *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 337 (2007). On February 19, 2002, Detective Jonathan Noone of the Lowell police department submitted his affidavit to a Superior Court judge (warrant judge). He asserted probable cause to believe that the defendant was engaged in the distribution of controlled substances contained in a specified unit at a commercial self-storage complex in Billerica. In support of that belief he reported that on the previous day a confidential informant had told Lowell police officers that Ramos used a storage unit at the Billerica facility, and that the records of the facility listed as an emergency contact person a woman whom Noone knew as a girlfriend of Ramos and as the mother of his child. The affidavit did not address the general reliability of the informant or the basis for his or her knowledge. It acknowledged that the tenant identified on the rental agreement was a second woman from an apartment adjacent to the girlfriend's address.

The affidavit described the use of the certified narcotics-trained dog, "Frisco," earlier in the day at the storage facility. Frisco was a Belgian Malinois dog with extensive training and certification in the detection of heroin, cocaine, marijuana, "ecstasy," and Oxycontin. For the previous four and one-half years Frisco had worked exclusively with Lowell K-9 Officer Norman Levasseur. Detective Noone reported that he (Noone) had often worked with Levasseur and Frisco. Noone's affidavit explained that drug-detecting dogs communicate their scent of controlled substances by "altering" behavior (also known as "hits"), including barking, scratching, and biting. He specified, "Officer Levasseur and K-9 Frisco have over 150 documented finds which have [led] to the seizure of illegal narcotics and the arrest of narcotics distributors." Noone related that earlier in the day Frisco had alerted twice outside the door of the suspected

unit as Levasseur had walked him past all eighteen units in one building and other units in a separate building.

In addition the affidavit attached, and proposed to incorporate by reference, a separate affidavit by State police Trooper Alan D. Hunte. The attached unsigned copy of the Hunte affidavit of the previous day's date described the investigation of a double homicide in which Ramos had become a suspect. Hunte had submitted his affidavit in successful application for a warrant to search an automobile believed used by the perpetrators of a double shooting and believed to contain trace evidence from the shooting (such as blood, fluids, tissue, or gun powder).

Hunte suspected Ramos as a perpetrator because cellular telephone records showed that the two homicide victims had been communicating by their telephone with two telephones used by Ramos and a friend in close proximity to the homicide scene during the one-half hour before the late-night shooting; and because Lowell police had received multiple-layer hearsay that Ramos and a second individual were involved in the shooting of the victims as the result of a dispute over money and narcotics. This hearsay information had come from a police interview of a female friend of the girlfriend of Ramos's brother.[1]

In response to the indictments for possession of the firearms and ammunition feeders, Ramos successfully moved for an evidentiary hearing upon the accuracy of Detective Noone's affidavit.[2] The witnesses included Officer Levasseur but not Detective Noone. After the conclusion of a two-day hearing, a Superior Court judge (hearing judge) found that Noone had affirmatively misstated that during the previous four and one-half years Frisco had accumulated "over 150 documented finds" leading to the seizure of narcotics and the arrests of dealers. From the uncontested testimony of Officer Levasseur, the judge found instead that

---

[1]Beyond the intersection of these two affidavits, the investigation of the homicides plays no part in our case of weapons charges.

[2]The motion included allegations of deliberate or reckless inclusions of false information within the meaning of *Franks* v. *Delaware*, 438 U.S. 154, 155-156, 171-172 (1978), and *Commonwealth* v. *Amral*, 407 Mass. 511, 522-523 (1990), to be discussed *infra*. The motion judge ruled that the affidavit provided "implied vouching of the dog's capability" and that it warranted an evidentiary hearing upon the claim of reckless misrepresentation of Frisco's reliability.

Frisco had detected drugs during that period on only five or six occasions; and that all other alerts or hits had occurred in training exercises.

The judge found also that the Noone affidavit suffered from certain omissions. It had not reported that, at the time of Frisco's alert at the suspected storage unit, handler Levasseur had cautioned an accompanying officer (not Noone) that the dog's reaction might be a false positive. It omitted also information that Frisco about six months earlier and ten days earlier, respectively, had falsely alerted on two occasions (once to a baseball glove and cash; and once to a bag of papers and cash).[3]

As a result of direct and cross-examination of Officer Levasseur (who had specialized in K-9 work for the six years before February, 2002, and who had trained exclusively with Frisco for the previous four and one-half years), the judge made additional findings upon the general subject of false positives: drug-sniffing dogs sometimes alert falsely out of a desire to please their trainer-handlers and to receive rewards of praise or play. Their highly developed sense of smell may alert falsely to the stale remnants or traces of drugs already removed from the scene under investigation. So called "extinction training" can teach the dogs to ignore such trace or "dead" scents. Frisco had not received such extinction training.

The judge found and ruled that Noone's collaboration with Levasseur and Frisco over the four and one-half years before the Ramos investigation should have informed him of Frisco's training, experience, and work record; and that his attribution of more than 150 real world discoveries and his omission of Frisco's false positives constituted reckless disregard for the truth concerning the dog's reliability. He ruled that Frisco's reliability was essential to the establishment of probable cause because no corroborating information adequately supported the suspicion of the storage of drugs in the unit. He concluded that an accurate affidavit account (substituting the genuine number of five or six valid alerts for the inflated figure of more than

---

[3]The judge found another misstatement: that Frisco had alerted twice, in separate strolls, in front of the storage unit when in fact he had passed and "hit" only once. He attributed that discrepancy to accidental miscommunication between the officers at the scene and Detective Noone.

150; acknowledging Levasseur's specific warning against a false indication and Frisco's recent false positives; and describing the general susceptibility of dogs to error, especially without extinction training) would fail to satisfy the standard of probable cause for the issuance of the warrant. Frisco's alert at the storage unit had been a false positive; it had contained no drugs. The judge therefore allowed the motion to suppress the feeders and the firearms seized from the unit.

A single justice of the Supreme Judicial Court authorized the Commonwealth to pursue an interlocutory appeal to this court. See G. L. c. 278, § 28E; Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996).

*Discussion.* In suppression matters the standard of review is well settled. The appellate court accepts the findings of the motion judge in the absence of clear error and defers to his or her assessment of the credibility and weight of testimony. See, e.g., *Commonwealth* v. *Gentile*, 437 Mass. 569, 573 (2002); *Commonwealth* v. *Clark*, 65 Mass. App. Ct. 39, 42 (2005), and cases cited. However the appellate court must conduct an independent review of the ultimate findings and conclusions of law of the motion judge so as to assure the correctness of the application of constitutional standards to the facts found. *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004). *Commonwealth* v. *Wilson*, 441 Mass. 390, 393 (2004).

1. *The governing law.* The motion judge measured the affidavit under the standard of *Franks* v. *Delaware*, 438 U.S. 154, 155-156, 171-172 (1978). In that decision the United States Supreme Court prescribed a process by which a defendant could challenge the validity of an affidavit supporting a search warrant and generating evidence against him. First, he must make a substantial preliminary showing that the affidavit contained one or more false statements made intentionally or with reckless disregard for the truth and providing information necessary to the finding of probable cause. That initial showing, by papers or otherwise, entitles the defendant to an evidentiary hearing. *Id.* at 171-172. If, at the evidentiary hearing, the defendant proves by a preponderance of the evidence that the intentionally or recklessly false statements proved necessary to the finding of probable cause and the issuance of the warrant, the warrant becomes void and the products of the search excluded from trial as violative of

the Fourth and Fourteenth Amendments to the United States Constitution. *Id.* at 155-156.

Massachusetts decisions applying the *Franks* doctrine have subsequently relaxed the initial requirement so as to authorize a judge, as a matter of sound discretion, to order an evidentiary hearing upon the mere demonstration that an affidavit contained misstatements. *Commonwealth* v. *Douzanis,* 384 Mass. 434, 439 (1981). *Commonwealth* v. *Signorine,* 404 Mass. 400, 406 (1989). *Commonwealth* v. *Alcantara,* 53 Mass. App. Ct. 591, 594 (2002).[4] Here the motion judge (as distinguished from the subsequent hearing judge) exercised that discretion to order a hearing out of concern about the singular importance and reliability of the dog's positive alert. On appeal the Commonwealth has not challenged the preliminary order as an abuse of discretion. Rather, it argues that the hearing judge has wrongly measured the evidence governing the sufficiency of the affidavit.

Another corollary of the *Franks* doctrine is that the motion and hearing judges will inspect an affidavit not only for positive misstatements but also for material omissions of fact. See *United States* v. *Hall,* 113 F.3d 157, 158-159 (9th Cir. 1997) (at warrant hearing a police officer withheld important knowledge of a sole informant's tainted credibility; probable cause lacking, warrant invalidated). See also *Commonwealth* v. *Dion,* 31 Mass. App. Ct. 168, 173 (1991) (excluding a harmful misstatement of the defendant's criminal record and including a favorable but omitted laboratory test of white powder found in the defendant's apartment; sufficient facts remain to support a finding of probable cause). In the present circumstance in which the positive alert of a drug-detection dog furnishes the essential support for the probable cause finding, the hearing judge will consider information withheld from the warrant judge or magistrate which tends to subtract from the reliability of the dog's performance. *United*

---

[4]The language of *Franks* provided that "when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his [evidentiary] hearing." *Franks* v. *Delaware,* 438 U.S. at 171-172 (footnote omitted). The cited Massachusetts decisions do not require that computation for allowance of the evidentiary hearing.

*States* v. *Ludwig*, 10 F.3d 1523, 1528 (10th Cir. 1993) (dictum; a dog alert could fall short of probable cause if the dog had a "poor accuracy record"). *United States* v. *Sundby*, 186 F.3d 873, 876 (8th Cir. 1999) (dictum; a court may look behind a search warrant for omitted information undermining a dog's reliability). *United States* v. *Donnelly*, 475 F.3d 946, 955 (8th Cir.), cert. denied, 551 U.S. 1123 (2007) (dictum; police affiants cannot withhold negative history casting doubt upon a dog's reliability).[5] See Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 10-6[c][l][i] (2008-2009 ed.) ("Omissions may be as bad as commissions"); 1 LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 2.2(g), at 527 n.357 (4th ed. 2004) (issuance of a warrant should require a demonstration of a dog's reliability).

2. *Measurement of the evidence.* Probable cause to issue a search warrant materializes if the affidavit presents sufficient facts to cause a prudent person to believe that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois* v. *Gates*, 462 U.S. 213, 238 (1983). In this instance the affidavit information of Frisco's alert at the storage unit becomes the decisive, if not exclusive, support for the warrant.

Trooper Hunte's affidavit provided little or no relevant reliable information. It was unsigned. Its sole reference to drug activity was the layered hearsay information that, inferentially, Ramos's brother had told his girlfriend that Ramos was involved in dealing; that the girlfriend had told a female friend; and that the female friend had told a police interviewer. No cure is present for any link of the hearsay chain.

The only elements of the Noone affidavit independent of

---

[5]Each of the cited decisions observes that a positive alert by a properly trained and reliable dog can, by itself, furnish probable cause for issuance of a search warrant. Each adds that the dog's reliability is impeachable by demonstrated misstatements in, or omissions from, an affidavit. Massachusetts decisions, also, have treated the alert of a trained narcotics-detection dog in combination with other indicia as sufficient support of probable cause to search. *Commonwealth* v. *Sinforoso*, 434 Mass. 320, 324 (2001). *Commonwealth* v. *Feyenord*, 445 Mass. 72, 83 (2005), cert. denied, 546 U.S. 1187 (2006). *Commonwealth* v. *Pinto*, 45 Mass. App. Ct. 790, 793 (1998). However, none of those decisions addressed circumstances in which a search warrant affiant allegedly embellished or concealed facts bearing upon the reliability of the dog's performance under the lens of the *Franks* standard.

Frisco's detection work were a report from a confidential informant that Ramos used the storage unit; and the assertion that the facility records listed his girlfriend as an alternate contact to the formal renter. The confidential informant did not have the support of information about his or her general reliability or basis of knowledge in accordance with *Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964), and *Spinelli* v. *United States*, 393 U.S. 410, 415 (1969). Nor did the informant report the storage of drugs at the unit. Probable cause, therefore, hinged on the reliability of the canine alert.

The hearing judge's findings upon the affidavit's treatment of that subject are not clearly erroneous, but rather well supported by the preponderant evidence. He was entitled to find that the deficiencies of Detective Noone's affidavit resulted from reckless disregard for the truth because Noone had indicated in that document that he had worked frequently with Officer Levasseur and Frisco. In particular Noone credited Frisco with "over 150 documented finds which have [led] to the seizure of illegal narcotics and the arrest of narcotics distributors." The magnitude of that misstatement, especially the claim of nonexistent seizures and arrests, amply supports a finding of recklessness. In addition, he omitted altogether the subject of false positives.

In accordance with *Franks*, 438 U.S. at 156, and the conforming Massachusetts decisions,[6] the judge set aside the misstated information and inserted the omitted material information to calculate the presence or absence of probable cause.[7] First, he removed the major misstatement that Frisco had compiled more than 150 accurate alerts and consequent drug seizures and arrests, and substituted the reality that he had scored five or six valid

---

[6]*Commonwealth* v. *Nine Hundred & Ninety-Two Dollars*, 383 Mass. 764, 766 (1981). *Commonwealth* v. *Douzanis*, 384 Mass. 434, 437 (1981). *Commonwealth* v. *Amral*, 407 Mass. at 519-520. *Commonwealth* v. *Ramirez*, 416 Mass. 41, 48 (1993).

[7]The judge constructed a hypothetically accurate affidavit and asked whether it would have furnished probable cause to search the storage unit. The Commonwealth portrays this process as a departure from the *Franks* standard. We view it as an accurate implementation. The gist of the Commonwealth's argument is that, even with the necessary corrective subtraction and additions to the affidavit, sufficient valid information remained to establish probable cause because Frisco was a well trained and continuously certified drug detector. For the reasons itemized in the ensuing text, that calculation is wrong.

detections during the preceding four and one-half years. In effect, the affidavit writer had exaggerated Frisco's active duty achievements by twenty-five to thirty-fold, an enormous inaccuracy. Second, the judge inserted the information that Frisco had committed two false positives during the six months before the storage unit assignment, one only ten days before. Third, he included the warning of trainer-handler Levasseur that the storage unit reaction might be a false positive. Finally, he added the fact that false positives constitute a general problem for drug-detecting canines and that Frisco had not had the benefit of extinction training. The judge credited Frisco's general competence as a "well-trained and experienced canine that received ongoing training from a competent handler, who sought to reduce false positives."[8] Nonetheless, the cumulative subtractions from the trustworthiness of the alert brought the corrected affidavit information below the level of probable cause.

*Conclusion.* The hearing judge's findings were not clearly erroneous; his rulings of law were correct.

> *Order suppressing evidence from*
> *warranted search affirmed.*

---

[8]The judge weighed the dog's background and continuing certification as general factors of reliability. Our analysis regards Frisco as a competent but fallible performer. It does not impugn him as an incapable sleuth or in any respect as canis non gratus in his work.