McCann, John S., J.
INTRODUCTION
The Commonwealth is represented by Assistant District Attorney Sarah Richardson. The defendant Edgar Santiago (Santiago) is represented by John Roemer, Esq.
Santiago is charged in three indictments alleging a firearms violation with two prior violent/drug crimes, two counts; and possession of cocaine with intent to distribute.
Santiago has filed a motion to suppress on the grounds that he had (1) a reasonable expectation of privacy in a locked storage unit designed for safekeeping personal property; (2) the affidavit failed to establish probable cause to search under the Fourth Amendment of the United States Constitution; (3) the affidavit failed to provide probable cause to search in violation of Article 14 of the Massachusetts Declaration of Rights and G.L.c. 276, §1 et seq.
FACTUAL BACKGROUND
On August 2, 2011, a search warrant issued for Worcester Police Officer Terrance Cahill. The affidavit in that warrant application in substance provided as follows: Worcester Police observed Santiago meeting with a confidential informant on five separate occasions. Santiago drove to the meeting place and conducted business with the Cl from his car. On August 1, Santiago was stopped by the police while in his motor vehicle. A search of the vehicle disclosed a pill bottle holding thirty-five individuálly wrapped “rocks” of cocaine.
On two occasions Santiago drove from an apartment at 4 Upland Gardens to meet and sell to the CI. Cahill obtained a search warrant for 4 Upland Gardens based on an assertion that “. . . it is common among dealers to keep an amount of cocaine with them in their vehicle when they are away from their place of residence and to keep a larger amount of cocaine at their residence.”
The apartment at 4 Upland Gardens was occupied by Jessica Ortiz. She is Santiago’s girlfriend. She told the police that Santiago stayed with her three or four nights a week, but lived in Southbridge. Records were checked with the Registry of Motor Vehicles and revealed that Santiago’s car was registered to him at 148 Mechanic Street, Southbridge, Massachusetts. Although the affidavit for the search warrant at 4 Upland Gardens was a search for cocaine, proceeds from the illegal drug sales, along with records of drug sales, no such items were found. However, officers reported finding receipts, keys and gate passes for Extra Storage in Auburn. Cahill then sought a search warrant for Santiago’s Extra Storage unit in Auburn. Reciting in his affidavit that it is common among drug dealers *82 to keep drugs in storage when away from their residences or vehicles. Page 7 of the affidavit recites:
As a result of the above investigation Sgt. Supernor contacted the Massachusetts State Police in order to have a narcotic detection K-9 conduct an exterior sniff of the storage unit. Trooper Coscia conducted the sniff with his K-9 partner. Trooper Coscia and a K-9 did a walk by of ten units. During the walk by the K-9 made an indication of narcotics at Unit #6. Trooper Coscia stated that his K-9 is a certified narcotics detection dog.
Nothing else is recited in regard to the qualifications of either Coscia or the K-9.
The warrant issued for Extra Space Storage, 245 Washington Street, Unit #006, Auburn, MA. A copy of that search warrant #11625 W0480 and the application and affidavit are attached hereto and incorporated herein as though set forth in full.
ISSUE PRESENTED
Whether the recitation in a warrant application by a Massachusetts State Trooper with his K-9 [dog] that the K-9 made an “indication of narcotics at Unit #6" . . . and further that his K-9 ”is a certified narcotics detection dog" are sufficient to establish probable cause to issue a warrant for failure of the handler and dog to provide records of reliability distinguishing locations where drugs are present or that they had a record of reliability.
DISCUSSION
For reasons set forth in recent case law and the defendant’s memorandum of law, the motion to suppress evidence found inside the storage unit at 245 Washington Street in Auburn, MAis allowed. Evidence that a dog had been trained and certified to detect narcotics, standing alone, is insufficient to establish the dog’s reliability for the purpose of determining probable cause to issue a search warrant. Following the line of reasoning presented by the court in Commonwealth v. Ramos, 72 Mass.App.Ct. 773 (2008), and Harris v. State of Florida, 71 So.3d 756 (2011), this court finds the search warrant deficient due to the fact that no records of reliability for the drug detection K-9 and his handler were provided by the police in their affidavit.
I. Probable Cause Standard
The Fourth Amendment to the United States Constitution provides that “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.” U.S. Const. amend. IV; see Massachusetts Declaration of Rights, art. 14. General Laws c. 276, Section 2B requires that an affidavit be submitted to support an application for a search warrant which “shall contain the facts, information, and circumstances upon which [the affiant] relies to establish sufficient grounds for the issuance of the warrant.” To justify the issuance of a search warrant, a magistrate must examine the facts and circumstances presented and determine that there is probable cause to issue the warrant. See Commonwealth v. Truax, 397 Mass. 174, 178 (1986). In reviewing a finding of probable cause, only the facts revealed on the face of the affidavit and any reasonable inferences therefrom may be considered. Commonwealth v. Allen, 406 Mass. 575, 578 (1990).
The United States Supreme Court has ruled that the probable cause standard “depends on the totality of the circumstances” and that “(p]robable cause exists when ‘there is a fair probability that contraband or evidence of a crime will be found in a particular place.’ ” Maryland v. Pringle, 540 U.S. 366, 371 (2003); United States v. Grubbs, 547 U.S. 90, 95 (2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). However, pursuant to art. 14 of the Massachusetts Declaration of Rights, Massachusetts courts employ a more precise standard based on the principles of Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969). In Commonwealth v. Upton, 394 Mass. 363 (1985), the Court reaffirmed the application of the Aguilar-Spinellistandard in Massachusetts. Under Aguilar, if an affidavit is based on information from an informant, the magistrate must be informed of (1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was “credible” or his information “reliable” (the veracity test). 378 U.S. at 114; Upton, 394 Mass. at 375. If the informant’s tip does not satisfy each aspect of the Aguilar test, other allegations in the affidavit that corroborate the information could support a finding of probable cause. Spinelli, 393 U.S. at 415; Upton, 394 Mass. at 375. Each prong of the Aguilar-Spinelli test — the basis of knowledge and the veracity of the informant — presents an independently important consideration. Upton, 394 Mass. at 375. The Upton Court held that independent police corroboration can make up for deficiencies in either or both prongs, however, each element of the test must be separately considered and satisfied or supplemented in some way. Upton, 394 Mass. at 376.
For several compelling reasons, police reliance on an alert by a drug-detection canine must invoke a similar critical analysis under Aguilar-Spinelli Dogs obviously cannot be cross examined or independently assessed as to reliability, therefore the Commonwealth must ensure uniformity in the way dogs are evaluated for the reliability of their alerts. See Harris, 71 So.3d at 772. In a search warrant affidavit based largely on an alert by a drug-detection dog, information that applies to the veracity factor would include (1) the dog’s training and certification records, (2) the dog’s past performance in the field, (3) the training and experience of the dog’s handler, (4) the ability of the dog to discern between the current presence of drugs *83 and the residue of contraband since removed, and (5) any other objective evidence related to reliability. Information that applies to the basis of knowledge factor would include details about (1) how the dog sniff was conducted, (2) whether police performed the sweep in a scrupulously neutral manner, (3) what reaction typically constitutes a positive alert for this particular dog, and (4) how the dog alerted on this particular occasion. These lists are not exhaustive, but the Commonwealth must ensure that it introduces sufficient evidence in order for the trial court to adequately undertake an objective evaluation of the officer’s belief in the dog’s reliability as a predicate for determining probable cause. See Harris, 71 So.3d at 758-59.
In the instant case, the Commonwealth provided none of this information in their affidavit, instead relying on a simple statement that the drug-detection dog was certified. Other allegations in the affidavit failed to make up for the lack of specific information related to the dog sniff. This court finds that a mere recital of a dog’s certification in a search warrant affidavit fails to establish veracity and basis of knowledge to establish probable cause under the Aguilar-Spinelli test as applied by Upton. 394 Mass. at 375.
II. Massachusetts Precedent
In its opposition to the defendant’s motion to suppress evidence, the Commonwealth contends that an affiant’s assertion that the dog and handler were certified in narcotics detection, standing alone, is sufficient evidence to support the issuance of a search warrant. The Commonwealth relies on Commonwealth v. Welch, 420 Mass. 646, 655 (1995), where a similar assertion in a search warrant affidavit did not render the affidavit invalid. As in the instant case, the affidavit in Welch simply stated that the dog was certified in narcotics detection, with no written showing of the qualifications of the detection dog and its handler. Id. at 649-50. The defendant in Welch argued that there was insufficient evidence for probable cause because the affidavit did not advert to the certificates of training for the dog and the dog handler. 420 Mass. at 655. The Welch court affirmed the motion judge’s denial of the defendant’s motion to suppress, however no cases or secondary sources whatsoever were cited to support the decision. Id. at 655. The court simply took the reliability of “certified” drug-detecting dogs as an accepted fact and offered no counter-argument to the defendant’s contention that the dog’s records of reliability needed to be demonstrated on the warrant affidavit. See id. While such assumptions may have once been widespread seventeen years ago at the time of Welch, now numerous secondary sources are available which call the “mythic infallibility of the dog’s nose” into serious doubt. See Illinois v. Caballes, 543 U.S. 405, 411 (2005) (Souter, J. dissenting); Andrew E. Taslitz, Does the Cold Nose Know? The Unscientific Myth of the Dog Scent Lineup, 42 Hastings L.J. 15 (1990); Richard E. Myers II, Detector Dogs and Probable Cause, 14 Geo. Mason L. Rev. 1 (2006); Lewis R. Katz & Aaron P. Golembiewski, Curbing the Dog: Extending the Protection of the Fourth Amendment to Police Drug Dogs, 85 Neb. L. Rev. 735 (2007); Robert C. Bird, An Examination of the Training and Reliability of the Narcotics Detection Dog, 85 Ky. L.J. 405 (1997); L. Lit., Handler Beliefs Affect Scent-Detection Dog Outcomes, 14 Animal Cognition 387 (2011).
Warrants protect against unreasonable searches only when affidavits permit the issue of probable cause to be judged “by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.” Johnson v. United States, 333 U.S. 10, 14 (1948). Rather than make an independent assessment of reliability and basis of knowledge, the judge in Welch accepted the affiant’s claim that the dog was certified without requiring any further inquiry as to the past performance record of the dog and handler. Welch, 420 Mass. at 655. However, due to the fact that assessment of the veracity and basis of knowledge for drug-detection dogs is more difficult than it is for anonymous informants, the dog’s records of reliability become critical to any probable cause analysis. See Upton, 394 Mass. at 374-75; Aguilar, 378 U.S. 108; Spinelli, 393 U.S. 410. If the court relies only on a statement of certification and fails to consider other factors concerning the dog’s past performance, then the court does not have a complete picture of the numerous circumstances that necessarily bear on the reasonableness of the officer’s belief in the dog’s reliability and whether the dog’s alert in a particular case indicates a fair probability that there were drugs present at the location. Harris, 71 So.3d at 771. In the absence of any compelling justification for the holding in Welch, it is difficult for this court to accept such a rule as binding, especially when a recent Massachusetts case, a First Circuit case, and persuasive cases in other jurisdictions suggest that more reliability than the bare minimum standard of the Welch holding is required. See Commonwealth v. Ramos, 72 Mass.App.Ct. 773, 776-81 (2008), Commonwealth v. Race, 529 F.2d 12, 12-14 (1st Cir., 1976), Harris, 71 So.3d at 759.
A recent Massachusetts decision has suggested a more demanding standard of reliability for drug-detecting dogs than the minimum standard applied by the court in Welch, The court in Commonwealth v. Ramos, 72 Mass.App.Ct. 773, 776-81 (2008), implicitly rejected the premise that a mere recital of the dog’s certification is an adequate showing of reliability. In Ramos, a Lowell detective obtained a warrant to search the defendant’s storage unit on grounds that it contained evidence of drug dealing. 72 Mass.App.Ct. at 774. The affidavit rested upon the assertion that a certified drug-detection dog handled by an experienced K-9 officer had alerted to the unit. Id, However, in the affidavit, the detective knowingly and recklessly *84 embellished some facts and concealed others that bore upon the reliability of the dog’s performance. Id. at 775. The affidavit stated that the dog and handler had “over 150 documented finds which led to the seizure of illegal narcotics” when in fact the vast majority of his finds were in training exercises, with only five or six occurring in real scenarios. Id. at 775-76. The affidavit also omitted information that the dog about six months earlier and ten days earlier had falsely alerted on two occasions. Id. at 776. The motion judge ruled that the dog’s reliability was essential to the establishment of probable cause because no corroborating information adequately supported the suspicion of the storage of drugs inside the rental unit. Id. As allowed by Franks v. Delaware, 438 U.S. 154, 171-72 (1978) (due to the officer’s recklessness), the motion judge concluded that an accurate hypothetical affidavit (substituting the genuine number of five or six valid alerts for the inflated figure of more than 150; acknowledging the dog’s false positives; and describing the general susceptibility of dogs to error) would still fail to satisfy the standard of probable cause for the issuance of the warrant. Ramos, 72 Mass.App.Ct. at 777. The key point is that both the faulty and the hypothetical affidavits correctly stated that the dog was trained and certified. See id. at 776-81. If certification alone was all that was required for probable cause, then the search in Ramos would have been upheld in accordance with the Welch decision. See id. at 776-81. Despite the dog’s certification, the judge allowed the motion to suppress the evidence seized from the storage unit. Id. at 781. The Appeals Court upheld the motion judge and the Supreme Judicial Court denied the Commonwealth’s motion for further review. Id.
While the Ramos court did not articulate exactly what needed to be included on a search warrant affidavit to satisfy reliability and basis of knowledge, it emphasized the dog’s past performance record and touched upon the concept of extinction training, which conditions dogs to refrain from alerting to residual odors when tangible substances are not actually present. Id. Following the line of reasoning implicitly suggested by Ramos, Massachusetts courts would appear to require more than a simple recital of certification in a search warrant affidavit. See id.
A First Circuit decision also highlights the importance of demonstrating a dog’s reliability in the context of probable cause. In Commonwealth v. Race, 529 F.2d 12, 12-14 (1st Cir., 1976), the issue on appeal was whether the Drug Enforcement Administration had probable cause to search two large crates in an air cargo warehouse after a drug-detection dog had alerted to the crates. The court stated, “We do not, of course, suggest that any dog’s excited behavior could, by itself, be adequate proof that a controlled substance was present, but here the Government laid a strong foundation of canine reliability and handler expertise.” Race, 529 F.2d at 14 [emphasis added]. The handler testified that the dog’s reaction constituted a “strong alert,” that he had worked with the dog for five years, that the dog had undergone intensive training five years earlier, that the dog had undergone at least four hours a week of follow-up training since then (as well as work experience), and that the strong reaction the dog had to the crates was one that in the past had invariably indicated the presence of certain kinds of controlled substances. Id. at 13-14. While the case did not involve a magistrate’s review of a search warrant affidavit due to the exigent circumstances of the search, Race shows how the First Circuit emphasizes evidence concerning the dog’s training and the expertise of its handler (demonstrating reliability) and the dog’s typical behavior when alerting to contraband (demonstrating basis of knowledge). See id. at 12-14. The First Circuit’s decision appears to parallel the Ramos decision in that a “foundation of canine reliability and handler expertise” is paramount under the probable cause requirements of art. 14 of the Massachusetts Declaration of Rights, and a simple recital that a dog is certified should not be considered a proper “foundation” for probable cause. See id. at 12-14; Ramos, 72 Mass.App.Ct. at 781. To extrapolate further, if the federal court requires more than a simple statement of certification under the totality of the circumstances test of Gates, then it would be reasonable to assume that Massachusetts courts require even more evidence to satisfy the stricter standard under Upton. See Gates, 462 U.S. at 238; Upton, 394 Mass. at 375-76.
III. Harris v. State of Florida 71 So.3d 756 (2011)
A recent decision entered by the Supreme Court of Florida provides the most persuasive argument in favor of requiring records of reliabiliiy in a search warrant affidavit. In Harris v. State of Florida, 71 So.3d 756, 759-60 (2011), during a traffic stop where the defendant seemed nervous, the police officer walked a drug-detection dog around the exterior of the car. The dog alerted to the door handle, after which time the officer decided that he had sufficient probable cause to search the interior of the automobile pursuant to the automobile exception to the warrant requirement. Harris, 71 So.3d at 759, 765; See Carroll v. United States, 267 U.S. 132, 149 (1925); United States v. Ortiz, 422 U.S. 891, 896 (1975). The trial court and appellate court both upheld the search. In reversing the ruling of the appellate court, the Supreme Court of Florida throughly analyzed the issue of what evidence must be introduced in order for the trial court to adequately undertake an objective evaluation of the officer’s belief in the dog’s reliability as a predicate for determining probable cause. Harris, 71 So.3d at 758-59. The in-depth analysis offered in Harris applies to the instant case because probable cause to search a vehicle is based on the same facts that would justify the issuance of a warrant. Maryland v. Dyson, 527 U.S. 465, 467 (1999). Also, Florida has adopted the totality of the circumstances language from Gates, therefore *85 under Upton Massachusetts courts should require more specific evidence than what is required under Harris. See Gates, 462 U.S. at 238; Upton, 394 Mass. at 375-76.
The Court held that under a totality of the circumstances analysis of a dog’s reliability, evidence that the dog has been trained and certified to detect narcotics, standing alone, is not sufficient to establish the dog’s reliability for purposes of determining probable cause. Harris, 71 So.3d at 759. A dog cannot be cross examined like a police officer whose observations at the scene may provide the basis for probable cause. Id. at 767. The Court held that in order to meet its burden of establishing that the officer had a reasonable basis for believing the dog to be reliable in order to establish probable cause, the State must present (1) the training and certification records, (2) an explanation of the meaning of the particular training and certification of the dog, (3) field performance records, (4) evidence concerning the experience and training of the officer handling the dog, and (5) any other objective evidence known to the officer about the dog’s reliability in being able to detect the presence of illegal substances within the vehicle. Id. at 759.
The Court likened a dog alert to situations where probable cause to search is based on information provided by informants. Id. at 767; see Gates, 462 U.S. at 230-31. A critical part of the informant’s reliability is the informant’s track record of giving accurate information in the past. Harris, 71 So.3d at 767; see McCray v. Illinois, 386 U.S. 300, 303 (1967); see also Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, sym 3.3 (4th ed. 2004) (“When the police undertake to establish the credibility of an informant as a part of their task of establishing, that probable cause exists for an arrest or search made or to be made exclusively or primarily upon that informant’s stoiy, they invariably do so by referring to the past performance of that informant”). Like the informant whose information forms the basis for probable cause, where the dog’s alert is the linchpin of the probable cause analysis, the reliability of the dog to alert to illegal substances within the storage unit is crucial to determining whether probable cause exists. See Harris, 71 So.3d at 767. If a dog is not a reliable detector of drugs, the dog’s alert in a particular case, by itself, does not indicate that drugs are probably present in the unit. See id. In fact, if the dog’s ability to alert to the presence of illegal substances in the unit is questionable, the danger is that individuals will be subjected to searches without probable cause, potentially exposing noncontraband items to public view. See id. Conversely, if a dog is a reliable detector of drugs, the dog’s alert in a particular case can indicate that drugs are probably present in the storage unit. See id. In those circumstances, the drug-detection dog’s alert will indicate to the officer that there is a “fair probability that contraband” will be found. Id. at 767 (quoting Gates, 462 U.S. at 238). Thus, to determine whether the officer has a reasonable basis for concluding that the dog’s alert indicates a fair probability that contraband will be found, the trial court must be able to adequately make an objective evaluation of the reliability of the dog. Harris, 71 So.3d at 767. The Supreme Court of Florida addressed several troubling factors that detract from the reliability of a “certified” dog, including the lack of a uniform certification standard, false alerts, handler error, handler cuing, and residual odor alerts.
A. No Uniform Standard for Training
The Harris court listed compelling reasons for why a statement that a dog has been trained and certified, by itself, is not enough to establish probable cause. First, the court noted that there is no uniform standard for an acceptable level of training, testing, or certification for drug-detection dogs. Harris, 71 So.3d at 767. The Court found support in Matheson v. State, 870 So.2d 8, 14 (Fla.2d DCA 2003), where the Second District Court of Appeals of Florida highlighted the fact that “conditioning and certification programs vary widely in their methods, elements, and tolerances of failure” and that “dogs themselves vaty in their abilities to accept, retain, or abide by their conditioning in widely varying real-world environments.” Harris, 71 So.3d at 764 (quoting Matheson, 870 So.2d at 14). Therefore, “(s]imply characterizing a dog as ‘trained’ and ‘certified’ imparts scant information about what the dog has been conditioned to do or not to do, or how successfully.” Harris, 71 So.3d at 768 (quoting Matheson, 870 So.2d at 14). The Second District reasoned that “ [a]n officer who knows only that his dog is trained and certified, and who has no other information, at most can only suspect that a search based on the dog’s alert will yield contraband. Of course mere suspicion cannot justify a search.” Harris, 71 So.3d at 768 (quoting Matheson, 870 So.2d at 13).
The Second District in Matheson suggested that multiple factors should be considered regarding training, including the exact training received, the criteria for selecting the dogs in the program, the standards the dog was required to meet to successfully complete the training program, and the “track record” of the dog in the field, with an emphasis on the number of mistakes the dog has made. Matheson, 870 So.2d at 14-15 (quoting State v. Foster, 390 So.2d 469, 470 (Fla.3d DCA 1980)). The Court in Harris also referenced a secondary source which noted that “not all dogs are well-trained and well-handled, nor are all dogs temperamentally suited to the demands of being a working dog. Some dogs are distractible or suggestible, and may alert improperly. Many factors may lead to an unreliable alert.” Harris, 71 So.3d at 768 (citing Richard E. Myers II, Detector Dogs and Probable Cause, 14 Geo. Mason. L. Rev. 1, 4 (2006)). This court agrees with the Supreme Court of Florida that the issue of whether a dog has been sufficiently trained *86 and certified must be evaluated on a case-by-case basis. Harris, 71 So.3d at 768.
B. False Alerts and Handler Error
The second concern emphasized by the Supreme Court of Florida is that any presumption of reliability based only on the fact that the dog has been trained and certified does not take into account the potential for false alerts and handler error. Harris, 71 So.3d at 768. “A false [alert] is an alert by the dog in the absence of the substance it is trained to detect.” Myers, supra, at 12. Cases have demonstrated that the false-alert rate among certified detection dogs varies significantly. Harris, 71 So.3d at 768 (citing Lewis R. Katz & Aaron P. Golembiewski, Curbing the Dog: Extending the Protection of the Fourth Amendment to Police Drug Dogs, 85 Neb. L. Rev. 735, 757 (2007)). False alerts can easily lead to the search of a person (or property) who is innocent of any wrongdoing. Myers, supra, at 12. Ramos and Harris serve as prime examples of the danger of false alerts because in both cases the officers failed to discover any drugs that the dog was trained to detect. Ramos, 72 Mass.App.Ct. at 774; Harris, 71 So.3d at 774. Although such information is not part of the determination of whether probable cause existed at the time of the actual search, such examples are illustrative of why it is important to engage in an inquiry of a dog’s reliability, including an evaluation of the dog’s performance in the field. Harris, 71 So.3d at 774. As noted by the Supreme Court of Florida, “[information that merely tallies successes does not provide a complete picture. Well-presented data should include the number of failures, if any, and the conditions under which they occurred.” Harris, 71 So.3d at 769, n.8 (quoting Robert C. Bird, An Examination of the Training and Reliability of the Narcotics Detection Dog, 85 Ky. L.J. 405, 425 (1997)).
False alerts are often the result of handler error. “Handlers interpret their dogs’ signals, and the handler alone makes the final decision whether a dog has detected narcotics. Practitioners in the field reveal that handler error accounts for almost all false detections.” Harris, 71 So.3d at 768-69 (quoting Bird, supra, at 432). Handler error implicates concerns over the “basis of knowledge” prong of the probable cause standard. Upton, 394 Mass. at 376. As the defense correctly argues in their motion, a basis of knowledge in the instant case would include what behavior the dog was conditioned to display as an “alert,” whether it displayed that behavior at unit #6, whether it did not display the same behavior at the other storage units, and whether “scrupulously neutral procedures” were employed in exposing the dog to the targeted storage unit. United States v. Thayer, 898 F.2d 805, 809 (D.C. Cir. 1990). All of this information is entirely absent from the search warrant affidavit in the instant case.
The closely-related issue of handler “cuing” also creates the potential for false alerts. The relationship between a dog and its handler provides unlimited opportunities for the handler to influence the dog’s behavior. Harris, 71 So.3d at 768 (quoting Katz, supra, at 762). With regard to cuing, the Harris Court referenced the Myers article: “Even the best of dogs, with the best-intentioned handler, can respond to subconscious cuing from the handler. If the handler believes that contraband is present, they may unwittingly cue the dog to alert regardless of the actual presence or absence of any contraband. Finally, some handlers may consciously cue their dog to alert to ratify a search they already want to conduct.” Harris, 71 So.3d at 769 (quoting Myers, supra, at 5 (footnote omitted)). Given this reality, the trial court must also focus on the training and certification of the dog handler, and such training should be apparent on a search warrant affidavit.
The instant case demonstrates the omnipresent potential for handler cuing as the police officers were aware of which storage unit belonged to Mr. Santiago before they even arrived at the facility. The affidavit is not clear whether the K-9 handler (Trooper Cascia) was aware that Unit #6 was Santiago’s unit before he conducted the dog sniff of the row of ten units. The affidavit made no mention of the procedures used to conduct the dog sniff, leaving no way for the court to determine whether the handler’s methods were “scrupulously neutral.” Thayer, 898 F.2d at 809. Furthermore, the affidavit did not even state whether Trooper Cascia was properly certified, nor did it reveal how long he had been working with this particular drug-detection dog. Such omissions further detract from both reliability and basis of knowledge pursuant to art. 14. See Upton, 394 Mass. at 375-76.
C. Residual Odor Alerts
A residual odor alert also may result in subjecting a person to an invasive search when no contraband is actually present. Because of the acute sensitivity of a dog’s nose, a dog may alert to a residual odor, which may not indicate the current presence of drugs at the location alerted. Harris, 71 So.3d at 769. Drugs may have been moved from the location at some point in the past or some residue may have been transferred to the location from a person’s skin or clothing. The Harris court, referencing Matheson, acknowledged the tendency of narcotics detection dogs to alert on the residual odors of drugs that are no longer present: “Dogs are conditioned, or induced to respond in particular ways to particular stimuli. . . [w]hile dogs are not motivated in ways that humans are, neither can they be calibrated to achieve mechanically consistent results.” Harris, 71 So.3d at 764 (quoting Matheson, 870 So.2d at 13-14). When a trained dog, doing what he has been conditioned to do, imparts to an officer that he detects the odor of contraband, this indeed may not be a false alert if only assessing the success of the dog’s conditioning. Harris, 71 So.3d at 763 (quoting Matheson, 870 So.2d at 13). However, for *87 Fourth Amendment purposes it is neither a false nor positive alert — the presence of a drug’s odor at an intensity detectable by the dog, but not by the officer, does not mean that the drug itself is present. Harris, 71 So.3d at 763-64 (quoting Matheson, 870 So.2d at 13). The veracity prong of the probable cause standard is again implicated if the drug-detection dog is shown to not be able to distinguish between odors from the current presence of drugs and residual odors. Extinction training conditions dogs to alert only to the former, which provides yet another reason why training records must be included in a search warrant affidavit.
V. Recent Support in Other Jurisdictions
In addition to Florida, other jurisdictions have been adopting a similar totality of the circumstances approach to determining a dog’s reliability.[1] The South Dakota Supreme Court stated that a variety of elements should be considered, “including such matters as the dog’s training and certification, its successes and failures in the field, and the experience and training of the officer handling the dog. Under the totality of the circumstances, the court can then weigh each of these factors.” State v. Nguyen, 726 N.W.2d 871, 876-77 (S.D. 2007).
The Tennessee Supreme Court recently rejected a per se rule that probable cause may be established through a positive alert by a trained narcotics detection dog. Harris, 71 So.3d at 770 (citing State v. England, 19 S.W.3d 762, 768 (Tenn. 2000)). The Court reasoned that the probable cause determination should turn on the dog’s reliability and that the trial court should ensure that the dog is reliable by making factual findings. Harris, 71 So.3d at 770 (citing England, 19 S.W.3d at 768). Such factors may include: (1) the canine’s training, (2) the canine’s “track record,” with emphasis on the amount of false negatives and false positives the dog has furnished, and (3) the officer’s training and experience with this particular canine. England, 19 S.W.3d at 768.
The United States District Court for the District of New Mexico also observed that certified dogs often falsely alert and found the fact that a dog is certified should not be sufficient to establish probable cause. Harris, 71 So.3d at 771 (citing United States v. Florez, 871 F.Sup. 1411, 1420-21 (D.N.M. 1994)). Just like the Court in Harris, the Florez Court analogized a dog’s alert to information provided by an informant: “Where records are not kept or are insufficient to establish the dog’s reliability, an alert by such a dog is much like hearsay from an anonymous informant, and corroboration is necessary to support the unproven reliability of the alerting dog and establish probable cause. To accept less would compromise the very principles that the requirement of probable cause was designed to protect.” Florez, 871 F.Sup. at 1424. The inclusion of evidence required by these other jurisdictions under the totality of the circumstances test of Gates would become even more vital under the stricter probable cause standard applied by Massachusetts courts. See Upton, 394 Mass. 363.
V. Affidavit as a whole fails to establish probable cause
Recall that under Upton, independent police corroboration may make up for deficiencies in either or both prongs of the Aguilar-Spinelli test, however, each element of the test must be separately considered and satisfied or supplemented in some way. 394 Mass. at 376. Pursuant to this holding, the Commonwealth additionally argues that the evidence in the affidavit, as a whole, constituted sufficient probable cause that evidence of illegal substances would be found at Extra Space Storage Unit #6. Lacking any particularized suspicion regarding the storage unit, other than the knowledge that it was rented by Santiago, the police asserted that it is “common” for drug dealers to keep drugs in storage units. Courts have rejected such generalizations where the affidavit in support of the search warrant fails to establish a nexus between the defendant’s drug activity and the location searched. See Commonwealth v. Pina, 453 Mass. 438, 442 (2009) (holding that the “common” practice of dealers delivering drugs by car to store their supply elsewhere did not provide probable cause for search of defendant’s apartment); Commonwealth v. Dillon, 79 Mass.App.Ct. 290, 295 (2011) (holding that the affidavit’s assertion about “standard drug trade practice” did not provide sufficiently specific facts for probable cause to search defendant’s residence). Police cannot rely on conclusoiy generalizations to establish probable cause but must set forth additional evidence detailing the reasons for their suspicion. See Pina, 453 Mass. at 442; Dillon, 79 Mass.App.Ct. at 295.
The affidavit must include particularized facts of a substantial and timely nexus between the defendant’s drug-selling activity and the location searched. See Commonwealth v. O’Day, 440 Mass. 296, 304 (2003); Commonwealth v. Cinelli, 389 Mass. 197, 213 (1983). Before seeking a search warrant for Santiago’s storage unit, the police first executed a search warrant for the apartment at 4 Upland Gardens. Although the affidavit for that search warrant stated that the search was for cocaine, proceeds from illegal drug sales, and records of drug sales, no such items were found. Due to the fact that (1) no drugs were found at the apartment and (2) the search warrant affidavit for unit #6 invoked an impermissible generalization, there was no substantial and timely nexus between drug-selling activity and the location searched. See O’Day, 440 Mass. at 304; Cinelli, 389 Mass. at 213. It is clear that the dog’s reliability is the lynchpin of the entire probable cause analysis. Therefore, this part of the Commonwealth’s argument must also fail. By way of analogy, it also stands to reason that if stating generally that dealers commonly keep drugs in storage units fails to establish probable cause, then stating generally that certified drug-detection dogs are reliable *88 should also fail to establish probable cause. In both scenarios, Massachusetts courts require more detailed evidence proving reliability and basis of knowledge before a search warrant can be issued.
VI. Burden of Proof
To adopt the argument set forth by the Commonwealth in the instant case and in the Welch opinion would be to place the burden on the defendant to uncover all records and evidence that might challenge a presumption of reliability — evidence that is exclusively within the control of law enforcement authorities and, further, evidence that law enforcement agencies may choose not to record. Harris, 71 So.3d at 770. In a special concurrence in Jardines v. State, No. 08-2101, 2011 Fla. LEXIS 884, *74 (Fla. Apr. 14, 2011), Justice Lewis reasoned that “[t]he complete lack of a uniform or standardized system of certifying drug detection canines renders it unduly burdensome for a defendant to challenge the validity of [a]... dog sniff... that results in an arrest.” If the courts are to make determinations of probable cause based on the alerts of dogs, who can neither be cross examined nor otherwise independently assessed as to their reliability, it is appropriate to place the burden on the Commonwealth to ensure uniformity in the way dogs are evaluated for reliability of their alerts. See Harris, 71 So.3d at 772.
VII. Conclusion
Without requiring the Commonwealth to address the track record of the dog and handler, and more specifically the number and timing of past false alerts, the minimum standard expressed in Welch creates no incentive to minimize false alerts. See 420 Mass. at 655. Without a meaningful inquiry into the past successes of the dog in the field and the officer’s handling practices, there is clear potential for abuse. Just as Massachusetts courts require detailed information to establish the veracity and basis of knowledge of informants, so too must the courts require detailed information to establish the veracity and basis of knowledge of drug-detection dogs and their handlers. See Upton, 394 Mass. at 376.
In the instant case, the search warrant simply stated that the dog was a “certified narcotics detection K-9.” Other than the dog alert, there were no particularized facts creating a substantial and timely nexus between Santiago and unit #6. Following the line of reasoning presented by the court in Commonwealth v. Ramos, 72 Mass.App.Ct. 733 (2008), and Harris v. State of Florida, 71 So.3d 756 (2011), this court finds the search warrant deficient due to the fact that no records of reliability for the drug-detection K-9 and his handler were provided by the police in their affidavit. The Commonwealth, which bears the burden of establishing probable cause, must present all records and evidence that are necessary to allow the trial court to evaluate the reliability of the dog’s alert. To establish veracity pursuant to art. 14, the Commonwealth must present evidence that the dog is properly trained and certified, and it must explain that training and certification so the trial court can evaluate how well the dog is trained and whether the dog falsely alerts during training. The Commonwealth must present records of the dog’s performance in the field including the dog’s successes (alerts where contraband that the dog was trained to detect was found) and failures (“unverified” alerts where no contraband that the dog was trained to detect was found). The Commonwealth then has the opportunity to present evidence explaining the significance of any unverified alerts, as well as the dogs ability to detect or distinguish residual odors. Finally, the Commonwealth must present evidence of the experience and training of the officer handling the dog, including his experience working with the particular dog referenced in the affidavit.
To establish basis of knowledge under Upton, the Commonwealth must present evidence showing how the dog sniff was conducted — specifically whether it was carried out in a scrupulously neutral manner. The Commonwealth must describe the behavior typically displayed by this particular canine when he makes a positive alert for illegal substances that he was trained to detect. Finally, the Commonwealth must state whether the dog displayed this particular behavior during his positive alert at Storage Unit #6, and whether he did not display this behavior at the other units. Deficiencies in either veracity or basis of knowledge can be supplemented or satisfied by sufficient, independent police corroboration.
Neither the dog nor the officer handling the dog is infallible, and stating that the dog is certified, by itself, does not demonstrate reliability or basis of knowledge. Rather, a recital of certification is only the beginning of the probable cause analysis. Only through the inclusion of additional evidence can the court adequately evaluate the reasonableness of the officer’s belief in the dog’s reliability under Massachusetts probable cause standard.
ORDER
For the reasons provided above, the search in this case violated both the Fourth Amendment and art. 14 of the Massachusetts Declaration of Rights. Therefore, the defendant’s motion to suppress is allowed.

 Editor’s Note: The referenced attachments have not been included with the reported opinion.

 This court recognizes the fact that several federal courts have adopted the opposite position that a mere recital of a dog’s certification in a search warrant affidavit is sufficient to support a finding of probable cause. See United States v. Kennedy, 131 F.3d 1371 (10th Cir. 1997); United States v. Owens, 167 F.3d 739 (1st Cir. 1999); United States v. Ludwig, No. 10-8009 (10th Cir. 2011); United States v. Parada, 577 F.3d 1275, 1282 (10th Cir. 2009). However, this court finds the reasoning articulated in Harris, Matheson, Nguyen, England and Florez far more persuasive. Accordingly, the in-depth analysis conducted by the Supreme Court of Florida in Harris serves as an appropriate guide for the issues presented in the instant case.